[No. E018547. Fourth Dist., Div. Two. Oct. 21, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRELL JONES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV, V.C.3, V.E.1, V.E.2.b, V.F, and appendix A.

COUNSEL

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Craig S. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RICHLI, J.—Defendant Terrell Jones (defendant), sometimes with an accomplice, went on a month-long robbery spree; if the opportunity presented itself, he and his accomplice also sexually assaulted their female victims. Defendant was convicted of 17 crimes arising out of 4 separate incidents. As a result, he was sentenced to a total of sixty-three years, eight months to life in prison; this included four separate indeterminate terms of twenty-five years to life (two concurrent and two consecutive) imposed pursuant to the "one strike" law (Pen. Code, § 667.61).

A table listing the charges and allegations against defendant, the jury's verdicts and findings, and the calculation of the resulting sentence is attached as appendix A.*

Defendant appeals, contending:

1. The trial court erroneously failed to give a jury instruction defining "assault" in connection with the charged assaults with a firearm.

2. The trial court erroneously failed to instruct (1) that a defendant's oral admissions should be viewed with caution, and (2) on the corpus delicti rule.

3. Defendant could not be convicted of both kidnapping for robbery and simple kidnapping of the same victim.

4. The trial court erroneously failed to instruct the jury on the one strike law allegations (Pen. Code, § 667.61, subds. (d)(2), (e)(1), (4) & (5)).

5. There was insufficient evidence to support the true findings on the one strike aggravated kidnapping circumstance (Pen. Code, § 667.61, subd. (e)(5)).

---

*Reporter's Note: Appendix A is in the nonpublished portion of the opinion.

6. The trial court erroneously imposed three separate one strike terms of twenty-five years to life for three sexual offenses which were committed against a single victim and on only two occasions.

7. The trial court erroneously imposed multiple one strike terms of twenty-five years to life for offenses against multiple victims on multiple occasions.

8. The trial court made a prohibited dual use of the fact of multiple victims, both to impose a one strike term of twenty-five years to life, and to make that term consecutive.

9. The jury erroneously made true findings on one strike circumstances which had not been pleaded.

10. The one strike aggravated kidnapping circumstance (Pen. Code, § 667.61, subd. (d)(2)) and simple kidnapping circumstance (Pen. Code, § 667.61, subd. (e)(1)) could not both be found true as to the same victim.

In the published portion of this opinion, we reject defendant's fourth contention, holding the trial court did not fail to instruct on the one strike circumstances, or if it did, the failure was not prejudicial. We also reject his fifth contention, holding there was sufficient evidence to support the one strike aggravated kidnapping circumstance, because it does not require proof that the defendant kidnapped the victim with the preexisting specific intent to commit a specified sexual offense. Finally, we reject his seventh contention, holding the one strike law allows multiple twenty-five-year-to-life terms for offenses against multiple victims on multiple occasions.

In the unpublished portion of this opinion, we agree with defendant's first, third and sixth contentions. Accordingly, we reverse his convictions for simple kidnapping and assault with a firearm, and we reverse a concurrent 25-year-to-life term on 1 count of rape by foreign object. Otherwise, we find no reversible error. We remand for retrial and/or resentencing

I

FACTUAL BACKGROUND

A. *Ana M., September 15, 1995 (Counts 1-9 and 11).*

On September 15, 1995, about 8 p.m., Ana M. went to a Kmart in Riverside to do some shopping. She agreed to pay a transient to wash her car windows. She returned to her car about 8:45 p.m. While she was talking to

the transient, defendant came up and told the transient to leave Ana alone. Defendant said he was a minister at a nearby church, and he wanted to give her a flyer. He reached into his backpack and pulled out a 9-millimeter semiautomatic gun.

Defendant ordered Ana to get in her car and open the passenger-side door. She did, and he got in. He told her to start the car, and to do exactly as he said, or he would kill her. After they had driven a little way, defendant made Ana pull over. He opened her purse, and found only $8. He said she "better have more than $8, or else he was going to fucking kill [her]." She gave defendant a ring she was wearing. Defendant took her driver's license, and said he knew where she lived, so that if she told anyone, he would kill her.

Defendant directed Ana to drive to the carport of an apartment complex. When they stopped there, defendant put his hand under her clothing and on her genitals, and digitally penetrated her.

Defendant told Ana to drive again; following his directions, she found herself at Highland Park in Riverside. Ana, believing she was going to be raped and killed, told defendant there was more money in the side pocket of her purse. He took it out; there was close to $400.

Defendant ordered Ana to take off her underwear, then digitally penetrated her again. He put his mouth on her chest and the gun to her vagina, then put his mouth on her vagina and the gun to her chest; he "repeated th[is] sequence about three times." He told her to turn around, and rubbed her buttocks. When he was done, he used "a black beanie" to dry all the places on Ana's body where his mouth had touched. Defendant had Ana drop him off at an apartment complex; he told her, "Take care, sweetheart."

On September 16, 1995, about 1 a.m., Jamie Lynn Rector, a registered nurse and trained sexual assault examiner, examined Ana. She found two abrasions, in the clitoral and perianal areas. She also found three black cloth fibers near Ana's genitals. She collected swabs of bodily fluids, but testing of these proved inconclusive.

Under Ana's supervision, a forensic artist made a composite drawing of her assailant which was introduced at trial.

On October 7, 1995, Ana happened to be at Club Metro in Riverside when she saw defendant sitting at the bar. She went outside and contacted George West, a sheriff's deputy who was working as security officer at the club. She said she had been robbed by a man who was inside the club; she described

defendant, and told West where he was sitting. As West approached him, defendant got up and started to walk away, but West caught up with him and took him into the club's office. West checked defendant's driver's license, but, because West found "nothing . . . to hold him on . . . other than a minor traffic warrant," he let him go.

Ana testified that a gun later found in defendant's car was similar to the gun she saw. She also testified that a ski cap found in his car "look[ed] familiar." However, no saliva or other bodily fluids were found on the ski cap, and the fibers taken from Ana's body did not match the cap.

B. *Michelle G., September 20, 1995 (Counts 13-14).*

On September 20, 1995, about 9:15 p.m., Michelle G. left her work at Tyler Galleria in Riverside. As she walked to her car, she passed a car with two men in it. Defendant got out of the car. He was wearing an olive green sweatshirt and light-colored jeans. He asked what time the mall closed; Michelle told him.

As Michelle got in her car and shut the door, defendant was still talking. She rolled down the window and said, "Excuse me?" Defendant said he needed to pick up a friend who worked at Nordstrom. Michelle pointed out that a woman was just walking into Nordstrom. Defendant then said, "Shut the 'F[uck]' up." He pointed a semiautomatic pistol in her face, and said, "I'm going to blow your head off if you don't be quiet."

Defendant ordered Michelle to unlock the passenger door; she complied. He said he was going to go around to the other side; he ordered her not to look at him, and not to try to leave. As he went around the car, Michelle got out, jumped over a nearby wall, then ran into a street and flagged down a passing car. When she got back to her car, her purse and her keys were gone.

Michelle picked defendant's picture out of a photo lineup. She told police Ana's composite "resembled" her attacker, although she also found it inaccurate in some respects. She testified that defendant's car was "very similar" to the one she had seen him get out of, and the gun found in his car was like the gun he had used. Finally, she testified that the sweatshirt defendant was wearing when he was arrested was dark green rather than olive green, but was otherwise like her attacker's.

C. *Maria L., September 20, 1995 (Counts 15-20).*

On September 20, 1995, about 10:30 p.m., Maria L. got off work and drove to a friend's apartment. As she got out of her car, a man walked up to

her. He pointed a gun at her and told her to give him money. He made her sit in the car, took her purse, and emptied it. A second man walked up; he spoke to the first man, then took Maria's keys from him.

The first man got into the back of the car; the second man got into the driver's seat, and drove to a bank. They told Maria if they did not get money, they would kill her. The first man held the gun on her, grabbed her by the hair, and "gave [her] a few blows on the head." The driver took her ring and earrings. At the bank, they made Maria use a drive-up automated teller machine (ATM) machine. She had to lean over the driver; accidentally, she honked the horn. They therefore left without getting any money.

They drove to a second bank, but it had no ATM machine. They drove to a third bank; on the way, the driver reached under Maria's clothing, touched her breasts and genitals, and digitally penetrated her.

At the third bank, the first man stood behind Maria at the ATM machine; she withdrew $300 and gave it to him. The two men then dropped her off at a Chinese restaurant.

A videotape taken by a camera at the ATM machine showed Maria, with defendant standing behind her. Maria was unable to recognize the man shown; she also was unable to identify the person shown in the composite.

D. *October 16, 1995: Domino's Pizza Robbery (Counts 21-24).*

On October 16, 1995, a little before 10 p.m., Ronald Peterson, the store manager, and Morgan Carroll, a driver, were working at a Domino's Pizza in Corona. Defendant and a second man came in. One of them was wearing a dark blue jacket and a black knit stocking cap; the other was wearing a dark trench coat and a black ski mask.

The man in the ski mask yelled, "Get down." Peterson and Carroll complied. The man in the knit cap pointed a gun at Peterson; the man in the ski mask, who also had a gun, said, "Give me all your money." Peterson opened the till, which contained at least $500. The man in the ski mask took the money from the till. The men also took both victims' wallets.

When police responded, both victims described the robbers as Hispanic. (Defendant is Black.) In a photo lineup, Peterson identified defendant. Peterson testified that the gun found in defendant's car was "extremely similar" to the gun used by the robber in the knit cap; Carroll testified that it looked "familiar," and "may" have been the same gun. Peterson and Carroll

both recognized the dark blue jacket taken from defendant's car, but neither Peterson nor Carroll recognized a ski cap taken from defendant's car.

### E. *Defendant's Arrest, October 16, 1995.*

Later on October 16, 1995, defendant was arrested as he was driving away from his apartment. There were three other people in the car. A search of the car revealed a loaded .38-caliber semiautomatic pistol, a knit ski cap, and a dark blue jacket.

Defendant was wearing a green sweatshirt, and he had $525 in his pocket. When the police interviewed him, he denied any involvement in the crimes. He said he was a lay minister, on disability from Wal-Mart. He denied ever owning a handgun. Police and pawnshop records indicated that in 1993, defendant had redeemed a different .38-caliber semiautomatic pistol.

The Kmart where Ana M. had been kidnapped was visible from defendant's apartment. Police searched the apartment, and found Peterson's and Carroll's wallets, with their drivers' licenses inside.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

V

CONTENTIONS REGARDING THE ONE STRIKE LAW<br>(PEN. CODE, § 667.61)

### A. *Statutory Background.*

Penal Code section 667.61 (section 667.61) was enacted in 1994 as part of what is commonly known as the one strike law. (*People* v. *Rayford* (1994) 9 Cal.4th 1, 8 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) In general, it requires the trial court to sentence a defendant found guilty of committing a specified sexual offense under specified aggravating circumstances to an extremely lengthy indeterminate term—either 15 years to life or 25 years to life, depending on the particular aggravating circumstances.

Thus, section 667.61 provides, as pertinent here:

"(a) A person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under

*See footnote, *ante*, page 693.

two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years except as provided in subdivision (j).

"(b) Except as provided in subdivision (a), a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years except as provided in subdivision (j).

"(c) This section shall apply to any of the following offenses:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) A violation of subdivision (a) of Section 289 [i.e., rape by foreign object].

"(6) Sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) The following circumstances shall apply to the offenses specified in subdivision (c):

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c).[5]

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) The following circumstances shall apply to the offenses specified in subdivision (c):

---

[5]Hereafter the "aggravated kidnapping circumstance."

"(1) Except as provided in paragraph (2) of subdivision (d), the defendant kidnapped the victim of the present offense in violation of Section 207, 208, 209, or 209.5.[6]

". . . . . . . . . . . . . . . . . . . . . . . .

"(4) The defendant personally used a dangerous or deadly weapon or firearm in the commission of the present offense in violation of Section 12022, 12022.3, or 12022.5.[7]

"(5) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim.[8]

". . . . . . . . . . . . . . . . . . . . . . . .

"(f) If only the minimum number of circumstances specified in subdivision (d) or (e) which are required for the punishment provided in subdivision (a) or (b) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) or (b) rather than being used to impose the punishment authorized under any other law, unless another law provides for a greater penalty. However, if any additional circumstance or circumstances specified in subdivision (d) or (e) have been pled and proved, the minimum number of circumstances shall be used as the basis for imposing the term provided in subdivision (a), and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any other law. Notwithstanding any other law, the court shall not strike any of the circumstances specified in subdivision (d) or (e).

"(g) The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable.

". . . . . . . . . . . . . . . . . . . . . . . .

"(i) For the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) shall be alleged in the accusatory

---

[6]Hereafter the "simple kidnapping circumstance."
[7]Hereafter the "deadly weapon use circumstance."
[8]Hereafter the "multiple victim circumstance."

pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

B. *Factual and Procedural Background.*

1. *The Allegations of the Information.*

The information alleged 4 one strike circumstances: an aggravated kidnapping circumstance, with respect to Ana M.; a simple kidnapping circumstance, with respect to Maria L.; a deadly weapon use circumstance; and a multiple victim circumstance. However, it did not make these allegations in connection with any particular count or offense.

2. *Discussion of Jury Instructions.*

The prosecution's form request for instructions listed a "special for [section] 667.61." The prosecution, however, never submitted any such proposed instruction. At a break during closing argument, the trial court pointed out that there were no instructions on the one strike circumstances. However, it suggested the jury's other findings might well dictate its findings on the one strike circumstances. As an example, it asserted that if the jury found defendant guilty of kidnapping Ana M. for robbery, and guilty of the sexual offenses against Ana M., presumably it would also find the aggravated kidnapping circumstance true. The trial court concluded that, although "it's not a good practice," no further instructions were necessary. Defense counsel responded, "I don't have any problem with it either way."

At the end of closing argument, the trial court tentatively indicated it was going to withdraw the aggravated kidnapping and simple kidnapping circumstances from the jury's consideration. Although it did not express its reasons very clearly, the court apparently was concerned that (1) the information had not attached the one strike allegations to any particular counts, and (2) the aggravated kidnapping circumstance allegation somehow conflicted with the charge that defendant kidnapped the same victim for robbery.

After a break, however, the trial court reversed itself. It ruled that, although the information should have pleaded the one strike circumstances in a "count-specific" manner, defendant had waived the defect by failing to demur. "[T]hey are now attached to certain counts, as they should have been originally. And I think that's corrected itself. We're past that."

Finally, the trial court noted that each sex offense involving a one strike deadly weapon use circumstance also involved a deadly weapon use enhancement under Penal Code section 12022.3, subdivision (a). It ruled it

would have the jury return only one finding on each count with respect to whether defendant used a deadly weapon.

### 3. *Verdict Forms and Instructions Thereon.*

The jury was not given any instructions specifically pertaining to the elements of the one strike circumstances.

In the instructions regarding the verdict forms, the jury was instructed that on count 4 (forcible oral copulation of Ana M.), count 5 (rape by foreign object of Ana M.), count 6 (rape by foreign object of Ana M.), and count 20 (rape by foreign object of Maria L.), it was to return a verdict on each of the four alleged one strike circumstances, in the following forms:

1. On the aggravated kidnapping circumstance:

"[D]efendant, Terrell Jones, during the commission of count [number] . . . , did [or did not] kidnap [name], and the movement of the victim did [or did not] substantially increase the risk of harm to the victim over and above the level of risk necessarily inherent in the underlying offense."

To clarify, the trial court added, "[t]he 'underlying offense' being that charged in that count."

2. On the simple kidnapping circumstance:

"[D]efendant, Terrell Jones, during the commission of count [number] . . . , did [or did not] kidnap [name], in violation of Penal Code sections 207, 208, 209, or 209.5."

3. On the multiple victim circumstance:

On count 4 (forcible oral copulation of Ana M.): "[D]efendant, Terrell Jones, did [or did not] commit the offense of oral copulation by force, violence, duress, menace or fear as charged in count IV . . . , in violation of Penal Code section 288a(c), on [Ana M.]."

On counts 5 and 6 (rape by foreign object of Ana M.): "[D]efendant, Terrell Jones, in the commission of the offense charged under count [number] . . . , did [or did not] commit the offense of penetration by a foreign object, in violation of Penal Code section 289(a), on [Ana M.]."

On count 20 (rape by foreign object of Maria L.): "[D]efendant, Terrell Jones, in the commission of the offense charged under count XX . . . , did

[or did not] commit the offense of penetration by foreign object, in violation of Penal Code section 289(a), on [Maria L.]."

4. On both the deadly weapon use circumstance and the deadly weapon use enhancement (Pen. Code, § 12022.3):

"[D]efendant, Terrell Jones, in the commission of the offense charged under count [number] . . . , used [or did not use] a deadly weapon . . . ."

C. *Failure to Instruct the Jury on the One Strike Circumstances.*

 Defendant contends the trial court erroneously failed to instruct the jury on the one strike circumstances (§ 667.61, subds. (d)(2), (e)(1), (e)(4), (e)(5)).

1. *Invited Error.*

Preliminarily, the People contend defense counsel invited any error. As noted, when the trial court suggested giving no instructions on the one strike circumstances, defense counsel replied, "I don't have any problem with it either way." It appears, however, that an erroneous failure to instruct sua sponte cannot be invited by mere acquiescence; rather, " ' "it must be clear from the record that defense counsel made an express objection to the relevant instructions." ' " (*People* v. *Bradford* (1997) 14 Cal.4th 1005, 1057 [60 Cal.Rptr.2d 225, 929 P.2d 544], cert. petn. filed July 16, 1997, quoting *People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1234 [249 Cal.Rptr. 71, 756 P.2d 795], quoting *People* v. *Wickersham* (1982) 32 Cal.3d 307, 330 [185 Cal.Rptr. 436, 650 P.2d 311]; see also *People* v. *Carrera* (1989) 49 Cal.3d 291, 311, fn. 8 [261 Cal.Rptr. 348, 777 P.2d 121], cert. den. (1990) 495 U.S. 911 [110 S.Ct. 1938, 109 L.Ed.2d 301].) As defense counsel did not expressly object, we proceed to the merits.

2. *Failure to Instruct on the Elements of the One Strike Circumstances.*

Defendant contends the trial court erroneously failed to instruct the jury on the elements of the one strike circumstances. The People respond that the trial court had no duty to instruct on the one strike circumstances because they "are merely part of a sentencing scheme and not 'enhancements.' " They rely on *People* v. *Bright* (1996) 12 Cal.4th 652 [49 Cal.Rptr.2d 732, 909 P.2d 1354], cert. den. __ U.S. __ [116 S.Ct. 2527, 135 L.Ed.2d 1051]. *Bright* dealt with Penal Code section 664, subdivision (a), which provides that the penalty for attempted willful, deliberate and premeditated murder is

life imprisonment with the possibility of parole. In a footnote, the court held this was a "penalty provision," because it established an increased base term, and not an "enhancement," which would be an additional term of imprisonment added to the base term. (*Id.*, at p. 656, fn. 2, citing Cal. Rules of Court, rule 405(c); accord, *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 526-527 [53 Cal.Rptr.2d 789, 917 P.2d 628].)

We agree the one strike law is a "penalty provision"[9] and not a true "enhancement." But so what? It does not follow that the trial court had no sua sponte duty to instruct on it. The one strike law itself requires that any fact which triggers its application "shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61, subd. (i).) ■ "Even in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. [Citation.]" (*People* v. *Mayfield* (1997) 14 Cal.4th 668, 773 [60 Cal.Rptr.2d 1, 928 P.2d 485], cert. den. ___ U.S. ___ [118 S.Ct. 116, 139 L.Ed.2d 68].) This is true regardless of whether the instruction pertains to a crime, a defense, an enhancement, or a "penalty provision."

■ We conclude the trial court had a duty to instruct on the elements of the one strike circumstances. (*People* v. *Estrada* (1997) 57 Cal.App.4th 1270, 1275 [67 Cal.Rptr.2d 596].)

Defendant recognizes, however, as did the trial court, that at least some of the jury's findings on the one strike circumstances necessarily followed from its findings on other issues. To this extent, either there was no error, because the instructions on those issues were adequate to guide the jury in making its findings on the one strike circumstances, or else the error was harmless beyond a reasonable doubt, because the jury necessarily resolved the factual question posed by the omitted instructions adversely to defendant under other, properly given instructions. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].)

i. *The Simple Kidnapping Circumstances.*

First, from the jury's verdict finding defendant guilty of committing the charged sexual offenses and guilty of kidnapping the victims, it necessarily followed that the simple kidnapping circumstance (§ 667.61, subd. (e)(1)) applied to each such sexual offense. The instructions on the substantive

---

[9]Or even better, an "alternative sentencing scheme." (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 527.)

kidnapping offenses gave the jury sufficient guidance with respect to the simple kidnapping circumstance. Moreover, even without specific instructions, the jury found all the elements of each simple kidnapping circumstance beyond a reasonable doubt. Defendant does not argue otherwise.

### ii. *The Deadly Weapon Use Circumstances.*

Second, from the jury's finding, for purposes of enhancement under Penal Code section 12022.3, that defendant used a deadly weapon in connection with each of the sexual offenses, it necessarily followed that the deadly weapon use circumstance (§ 667.61, subd. (e)(4)) applied to each such sexual offense. Hence, again, the failure to instruct on the deadly weapon use circumstance was not error; or, if error, was harmless. Again, defendant does not argue otherwise.[10]

### iii. *The Multiple Victim Circumstances.*

Third, from the jury's verdict finding defendant guilty of the charged sexual offenses against both Ana M. and Maria L., it necessarily followed that the multiple victim circumstance (§ 667.61, subd. (e)(5)) applied. Defendant contends, however, that, even assuming a true finding on the multiple victim circumstance necessarily followed, the jury made no such finding. As he points out, the jury was never asked to make a finding that, in the words of the multiple victim circumstance, he had been convicted in the present case of committing a specified sexual offense "against more than one victim." (§ 667.61, subd. (e)(5).) Rather, the jury merely made a finding, with respect to each alleged sexual offense, that defendant had committed it against the alleged victim. These findings therefore essentially just restated the guilty verdicts.

■ " 'A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court.' [Citations.]" (*People* v. *Mackabee* (1989) 214 Cal.App.3d 1250, 1256 [263 Cal.Rptr. 183], quoting *People* v. *Radil* (1977) 76 Cal.App.3d 702, 710 [142 Cal.Rptr. 233]; accord, *People* v. *Allen* (1985) 165 Cal.App.3d 616, 628 [211 Cal.Rptr. 837].) "The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. [Citation.]" (*Ibid.*) "[T]echnical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably

---

[10]Indeed, defendant concedes: "[T]he verdict form used for the (e)(4) enhancement tracked the statute and the jury was otherwise instructed on the identical elements included in the (e)(4) enhancement. Thus, even in the absence of a specific jury instruction on the 667.61(e)(4) enhancements and a specifically designated verdict form, there can be no question that the enhancement is sustainable on appeal."

clear, and the accused's substantial rights suffered no prejudice. [Citations.]" (*People* v. *Webster* (1991) 54 Cal.3d 411, 447 [285 Cal.Rptr. 31, 814 P.2d 1273], fn. omitted, cert. den. (1992) 503 U.S. 1009 [112 S.Ct. 1772, 118 L.Ed.2d 431].) ■ Here, it is clear the jury intended to find each multiple victim circumstance true. It made such findings to the best of its ability, with the verdict forms it had been given. Defendant argues that a guilty verdict on each of the substantive sexual offenses is insufficient, and that a separate finding on each multiple victim circumstance was required. Here, however, the jury *did* make separate (albeit redundant) findings. But even if it did not, or even if its findings did not adequately track the language of the multiple victim circumstance, the error would be harmless. In *People* v. *Cory* (1984) 157 Cal.App.3d 1094, 1098 [204 Cal.Rptr. 117], the defendant was charged with robbery. The information alleged, for purposes of both probation ineligibility (Pen. Code, § 1203.06, subd. (a)(1)) and sentence enhancement (Pen. Code, § 12022.5), that he used a firearm. (157 Cal.App.3d at pp. 1101-1102.) The jury returned a finding " 'that said defendant personally used a firearm within the meaning of Penal Code Section 1203.06(a)(1)' "; it did not return a separate finding with regard to Penal Code section 12022.5. (157 Cal.App.3d at p. 1102.) The court held the facts to be found under both statutes were the same, and hence a single finding was sufficient for both purposes. (*Id.*, at pp. 1102-1104; see also *People* v. *Beamon* (1973) 8 Cal.3d 625, 629, fn. 2 [105 Cal.Rptr. 681, 504 P.2d 905] ["The finding that defendant was armed with a deadly weapon . . . would thus appear to be applicable for all purposes (see [Pen. Code,] §§ 1203, 3024, 12022 . . . .)"]; *People* v. *Snyder* (1989) 208 Cal.App.3d 1141, 1143-1146 [256 Cal.Rptr. 601] [verdict finding defendant guilty of offense of simple escape, plus true finding on allegation of force, constituted verdict finding defendant guilty of offense of forcible escape].)

■ Defendant cites Penal Code section 1162, which provides, as pertinent here: "If the jury persist in finding an informal verdict, from which, however, it can be clearly understood that their intention is to find in favor of the defendant upon the issue, it must be entered in the terms in which it is found, and the Court must give judgment of acquittal. *But no judgment of conviction can be given unless the jury expressly find against the defendant on the issue . . . .*" (Italics added.) All this requires is that the intention to convict of the crime charged be unmistakably expressed. (*People* v. *Tilley* (1901) 135 Cal. 61, 62 [67 P. 42]; *People* v. *Mackabee, supra*, 214 Cal.App.3d at p. 1256.) The verdict is insufficient only "if it be susceptible of a different construction than that of guilty of the crime charged." (*People* v. *Tilley, supra*, 135 Cal. at p. 63.) ■ Assuming, without deciding, that Penal Code section 1162 applies not only to a "verdict" of "conviction" but also to a finding on an enhancement or other penalty provision, the only

construction to which the findings here are susceptible is that the multiple victim circumstances are true. Alternatively, any violation of Penal Code section 1162 was harmless, for the reasons already stated.

Finally, defendant complains that once the jury found him guilty of the underlying substantive sexual offenses, it had "no choice" but to make the related multiple victim circumstance finding. This is not entirely true. Assuming the jury found defendant guilty of the sexual offenses against Ana M., but *not* guilty of the sexual offenses against Maria L., and assuming it filled out the verdict forms on the multiple victim circumstances correspondingly, we would then construe it as finding the related multiple victim circumstances *not* true.

■ We do agree that, once the jury found defendant guilty of an underlying substantive sexual offense against both of the victims, logically it should also have found the related multiple victim circumstance true. But we fail to see anything wrong with this. In this respect, a one strike multiple victim circumstance is analogous to a multiple murder special circumstance (Pen. Code, § 190.2, subd. (a)(3)). Recently, in *People* v. *Marshall* (1996) 13 Cal.4th 799 [55 Cal.Rptr.2d 347, 919 P.2d 1280], the defendant was charged with three counts of murder, with a multiple-murder special-circumstance allegation. The trial court, however, refused to instruct the jury on the multiple murder special circumstance, and refused to submit it to the jury for a finding. (*Id.*, at p. 850.) Instead, it waited until the jury returned verdicts finding the defendant guilty on multiple counts of murder; it then ruled that those verdicts constituted a true finding on the multiple-murder special-circumstance allegation. (*Id.*, at p. 816.)

The Supreme Court held that, although this was error, the error was "undoubtedly harmless." (*People* v. *Marshall, supra,* 13 Cal.4th at p. 852.) "The factual issue posed by the omitted instruction necessarily was resolved adversely to defendant under other properly given instructions. [Citation.] That is to say, the jury's verdict of guilt on *three counts* of murder in the first degree necessarily established the factual predicate of the special circumstance, that defendant was convicted in this proceeding of more than one count of murder in the first or second degree." (*Ibid.*)

Thus, in our case, even if the trial court had not only failed to instruct the jury on the multiple victim circumstances, but had also failed to give the jury any verdict forms for the multiple victim circumstances, the error would be harmless.

### iv. *The Aggravated Kidnapping Circumstances.*

■ Defendant argues that even though the jury found him guilty of kidnapping Ana M. for robbery and guilty of committing the charged sexual

offenses against Ana M., it did not necessarily find the aggravated kidnapping circumstances (§ 667.61, subd. (d)(2)) true. "Kidnapping for robbery . . . requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself." (*People* v. *Rayford, supra,* 9 Cal.4th at p. 12.) By contrast, the aggravated kidnapping circumstance requires movement of the victim which substantially increases the risk of harm over and above that necessarily present in the underlying sexual offense. (§ 667.61, subd. (d)(2).) Defendant contends these are not necessarily equivalent.

But the trial court *did* give an instruction on this one aspect of this one strike circumstance. As noted, when it was instructing the jury on the verdict forms for the aggravated kidnapping circumstance, it told the jury it had to find whether or not the movement of the victim substantially increased the risk of harm to the victim over and above the level of risk necessarily inherent in the underlying offense, then added, "[t]he 'underlying offense' being that charged in that count." Thus, the jury was properly instructed on this point.

As an alternative ground for our decision, however, we believe defendant is drawing a distinction without a difference. For purposes of both kidnapping for robbery and the aggravated kidnapping circumstance, the "risk of harm" element focuses on the movement of the victim during the kidnapping, and the resulting risk of harm. The jury is to consider "such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. (See, e.g., *People* v. *Lara* [(1974)] 12 Cal.3d [903,] 908 & fn. 4 [117 Cal.Rptr. 549, 528 P.2d 365] [examples of such risk of harm 'include not only desperate attempts by the victim to extricate himself but also unforeseen intervention by third parties']; *In re Earley* [(1975)] 14 Cal.3d [122,] 132 [120 Cal.Rptr. 881, 528 P.2d 721] ['asportation gave rise to dangers, not inherent in robbery, that an auto accident might occur or that the victim might attempt to escape from the moving car or be pushed therefrom by [defendant]'); cf. *People* v. *Caudillo* (1978) 21 Cal.3d 562, 574 . . . [aggravated kidnapping includes review of such factors as 'the defendant's motivation to escape detection' and 'the possible enhancement of danger to the victim resulting from the movement.'].)" (*People* v. *Rayford, supra,* 9 Cal.4th at pp. 13-14.)

" '[A]ny substantial asportation which involves forcible control of the . . . victim" will satisfy the " 'risk of harm' " test. (*In re Earley* (1975) 14 Cal.3d 122, 132 [120 Cal.Rptr. 881, 534 P.2d 721], quoting *People* v. *Thornton*

(1974) 11 Cal.3d 738, 768 [114 Cal.Rptr. 467, 523 P.2d 267].) Accordingly, "[t]he 'risk of harm' test is satisfied when the victim is forced to travel a substantial distance under the threat of imminent injury by a deadly weapon. [Citation.]" (14 Cal.3d at p. 131; accord, *People* v. *Lara* (1974) 12 Cal.3d 903, 908 [117 Cal.Rptr. 549, 528 P.2d 365].) On the other hand, when a defendant "does no more than move his victim around inside the premises in which he finds him," the movement generally will be deemed insufficient. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1140 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].)

Admittedly, in theory, the risk is to be compared, on the one hand, to the risk inherent in a "standstill" robbery, and on the other, to the risk inherent in a "standstill" sexual offense. Nevertheless, we are not speaking of some *particular* robbery or sexual offense, but rather of a *hypothetical, typical* robbery or sexual offense. The risk of harm inherent in robbery arises from the perpetrator's use of force or fear, and from brief movements incidental to the robbery (*People* v. *Daniels, supra*, 71 Cal.2d at p. 1134)—for example, where " 'the victim [is] confined briefly at gunpoint[,] or bound and detained, or moved into and left in another room or place.' " (*Id.*, at p. 1135, italics omitted, quoting *People* v. *Levy* (1965) 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842, 844].) But similar force or fear, and similar incidental movements, are equally inherent in the enumerated sexual offenses. With one exception, these are all committed by means of force, violence, duress, menace, or fear of immediate bodily injury.[11] The sole exception is the commission of a lewd and lascivious act upon a child under age 14, in which the adult's domination over the child is tantamount to force or fear. We therefore perceive no significant distinction in inherent risk as between robbery and the enumerated sexual offenses.

---

[11]The enumerated sexual offenses (§ 667.61, subd. (c)) are:

1. Rape, when committed by force, violence, duress, menace, or fear of immediate bodily injury to the victim or another person. (Pen. Code, § 261, subd. (a)(2).)

2. Spousal rape, when committed by force, violence, duress, menace, or fear of immediate bodily injury to the victim or another person. (Pen. Code, § 262, subd. (a)(1).)

3. Rape in concert by force or violence. (Pen. Code, § 264.1.)

4. Lewd and lascivious act upon a child under age 14, when committed by force, violence, duress, menace, or fear of immediate bodily injury to the victim or another person. (Pen. Code, § 288, subd. (b).)

5. Rape by foreign object, when committed by force, violence, duress, menace, fear of immediate bodily injury to the victim or another person, or threat. (Pen. Code, § 289, subd. (a).)

6. Sodomy (Pen. Code, § 286) or oral copulation (Pen. Code, § 288a), when committed by force, violence, duress, menace, or fear of immediate bodily injury to the victim or another person.

7. Lewd and lascivious act upon a child under age 14 (Pen. Code, § 288, subd. (a)), unless the defendant qualifies for probation.

We conclude that, as with the other one strike circumstances, the jury was adequately instructed with respect to the aggravated kidnapping circumstance; or, if not, the error was harmless beyond a reasonable doubt, because the jury necessarily resolved the factual question posed by the omitted instruction adversely to defendant under other properly given instructions.

■ Defendant also contends the verdict forms for the aggravated kidnapping circumstances were erroneous, so that the instructions incorporating the verdict forms misled the jury regarding the elements of the aggravated kidnapping circumstance.

The form for a "true" finding on the aggravated kidnapping circumstance properly recited that defendant "did kidnap [name], and the movement of the victim did substantially increase the risk of harm to the victim over and above the level of risk necessarily inherent in the underlying offense." The form for a "not true" finding, however, recited that defendant "did not kidnap [name], *and* the movement of the victim did not substantially increase the risk of harm to the victim over and above the level of risk necessarily inherent in the underlying offense." (Italics added.) Defendant argues essentially that if the jury found that he *did* kidnap the victim, but also found that the movement of the victim *did not* substantially increase the risk of harm to the victim, it would have been unable to use the "not true" verdict form. He concludes that, once the jury found him guilty of a substantive kidnapping offense, the "not true" form "basically directed a verdict" on the aggravated kidnapping circumstances.

We disagree, for three reasons. First, defendant waived any defect in the verdict forms by failing to object at trial. (*People* v. *Toro* (1989) 47 Cal.3d 966, 976, fn. 6 [254 Cal.Rptr. 811, 766 P.2d 577]; *People* v. *Lewis* (1983) 147 Cal.App.3d 1135, 1142 [195 Cal.Rptr. 728].) Defendant argues to the contrary, citing *In re Birdwell* (1996) 50 Cal.App.4th 926 [58 Cal.Rptr.2d 244]. The *Birdwell* court, however, acknowledged that, as a general rule, "a failure to object to the form of the verdict cannot be raised for the first time on appeal." (*Id.*, at p. 930.) It then carved out a limited exception to this rule, where the defect in the verdict forms is the omission of the degree of the crime, because this results in an unauthorized sentence. (*Id.*, at pp. 930-931; see also *People* v. *Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 77, fn. 20 [2 Cal.Rptr.2d 389, 820 P.2d 613].) Our case is not within the *Birdwell* exception.

Second, even assuming the error in the verdict forms was tantamount to an error in instructing the jury on the aggravated kidnapping circumstance, the *Watson* (*People* v. *Watson* (1956) 46 Cal.2d 836 [299 P.2d 243]) test of

prejudice would apply. (*People* v. *Wims* (1995) 10 Cal.4th 293, 303-315 [41 Cal.Rptr.2d 241, 895 P.2d 77], cert. den. (1996) 516 U.S. 1120 [116 S.Ct. 927, 133 L.Ed.2d 855]; *People* v. *Estrada*, *supra*, 57 Cal.App.4th at p. 1275.) The verdict form for a "not true" finding erroneously suggested it would apply only if the jury found *both* prongs of the aggravated kidnapping circumstance not true; but the verdict form for a "true" finding *correctly* indicated it would apply only if the jury found both prongs *true*. The jury could not reasonably have deemed the "not true" form controlling over the "true" form. Presumably, it returned the "true" form because it found both prongs true. Thus, either it was not confused by the "not true" form, or else any such confusion did not affect the verdict.

Third and finally, as we have already held, the jury's findings on the kidnapping for robbery charge demonstrate that it resolved the factual question posed adversely to defendant under other, properly given instructions. Accordingly, the error was harmless even under the more stringent *Chapman*[12] test of prejudice.

 3. *Failure to Instruct on Proof Beyond Reasonable Doubt.*\*

. . . . . . . . . . . . . . . . . . . . . . . .

 D. *The Sufficiency of the Evidence to Support the One Strike Aggravated Kidnapping Circumstances.*

■ Defendant contends there was insufficient evidence to support the aggravated kidnapping circumstance findings on counts 4 (oral copulation of Ana M.), 5 (rape by foreign object of Ana M.) and 6 (rape by foreign object of Ana M.).

Although couched in terms of the sufficiency of the evidence, the real issue is a purely legal one. Defendant assumes the circumstance applies only if he kidnapped the victim with the intent to commit the sexual offense; he contends there was insufficient evidence of this specific intent. The People deny that any such specific intent is required.

This circumstance by its terms applies if (1) the defendant "is convicted of" a specified sexual offense, (2) "[t]he defendant kidnapped the victim" of the sexual offense, and (3) "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk

---

[12]*Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].
 \*See footnote, *ante*, page 693.

necessarily inherent" in the sexual offense. (§ 667.61, subds. (a), (c), (d)(2).) Nothing in this definition explicitly requires that the defendant kidnap the victim for the purpose of committing the sexual offense. It would appear the circumstance would apply if the defendant commits the sexual offense, then, as an afterthought, kidnaps the victim; or if the defendant kidnaps the victim for another purpose, e.g., to commit robbery, then, as an afterthought, commits the sexual offense (as defendant claims the evidence here shows).

Defendant infers a specific intent requirement from the requirement that the movement must substantially increase the risk of harm to the victim beyond the risk inherent in the sexual offense. As we discussed in part V.C.2.iv, *ante*, this "risk of harm" requirement is drawn from cases dealing with kidnapping for the purpose of robbery (Pen. Code, § 209, subd. (b)). "Kidnapping for robbery . . . requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself." (*People* v. *Rayford, supra,* 9 Cal.4th at p. 12.) This distinguishes a kidnapping for robbery, which is punishable by life imprisonment, from an ordinary robbery. (*People* v. *Daniels, supra,* 71 Cal.2d at pp. 1134-1139.) Thus, it precludes a conviction of kidnapping for robbery "based on movement of the victim that is criminologically insignificant." (*In re Crumpton* (1973) 9 Cal.3d 463, 466 [106 Cal.Rptr. 770, 507 P.2d 74].) It follows that, in enacting the aggravated kidnapping circumstance, the Legislature intended to distinguish a kidnapping of the victim of an enumerated sexual offense, which triggers a 25-year-to-life term, from a "criminologically insignificant" movement of the victim of the sexual offense.

Kidnapping for robbery also requires that the defendant commit the kidnapping with the specific intent to rob. (*People* v. *Tribble* (1971) 4 Cal.3d 826, 830-832 [94 Cal.Rptr. 613, 484 P.2d 589].) This requirement is derived from the statutory definition of the offense as "kidnap[ping] or carr[ying] away . . . to commit robbery." (Pen. Code, § 209, subd. (b).) "A person could not kidnap and carry away his victim to commit robbery if the intent to rob was not formed until after the kidnaping had occurred." (*People* v. *Tribble, supra,* 4 Cal.3d at p. 831.)

The specific intent requirement is entirely separate from the "risk of harm" requirement, and exists for different reasons. The Legislature deliberately imported the "risk of harm" requirement into the one strike aggravated kidnapping circumstance. We see no reason to drag the specific intent requirement along with it. We conclude there could be sufficient evidence to support the aggravated kidnapping circumstance even if there was no evidence that defendant kidnapped the victim with the preexisting specific intent to commit the sexual offense.

In the alternative, we believe there was sufficient evidence that defendant did kidnap Ana M. with the preexisting specific intent to commit the sexual offenses, based on the fact that he and his accomplice later kidnapped and committed similar sexual offenses against Maria L. (See *People v. Brandon* (1995) 32 Cal.App.4th 1033, 1049 [38 Cal.Rptr.2d 751]; *People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765-1766 [24 Cal.Rptr.2d 321].) The fact that defendant kidnapped Ana M. with the additional intent to commit robbery, and perhaps the intent to commit carjacking, is irrelevant. He could have kidnapped Ana M. with the specific intent to commit multiple crimes.

Finally, there was sufficient evidence that the movement of Ana M. substantially increased the risk of harm beyond that inherent in the underlying sexual offenses. "The 'risk of harm' test is satisfied when the victim is forced to travel a substantial distance under the threat of imminent injury by a deadly weapon. [Citation.]" (*In re Earley, supra*, 14 Cal.3d at p. 131, fn. omitted.) That is precisely what happened here.

We conclude the challenged aggravated kidnapping circumstances were supported by substantial evidence.

E. *Application of the One Strike Law in Sentencing.*

1. *Separate 25-year-to-life Terms for Each of the 3 Sexual Offenses Against Ana M.**

. . . . . . . . . . . . . . . . . . . . . . . . .

2. *Reliance on the Fact of a Different Victim to Impose a Consecutive 25-year-to-life Term for the Sexual Offense Against Maria L. (Count 20).*

In addition to imposing a term of 25 years to life on count 4 (forcible oral copulation of Ana M.), and concurrent terms of 25 years to life on counts 5 and 6 (rape by foreign object of Ana M.), the trial court imposed a *consecutive* term of 25 years to life on count 20 (rape by foreign object of Maria L.). It based this 25-year-to-life term on the simple kidnapping circumstance plus the multiple victim circumstance. (§ 667.61, subds. (e)(1), (5).) It ran it consecutively based on Penal Code section "667.6(d) . . . . [¶] And also Rule 425(a)(1) and Rule 426(a)(1). These are separate victims and also violent sex crimes."

---

*See footnote, *ante*, page 693.

### a. *Offenses Against Multiple Victims on Multiple Occasions.*

■ Defendant contends section 667.61, when properly construed, does not permit multiple 25-year-to-life terms for offenses against multiple victims on multiple occasions. He argues that, because subdivision (e) deals expressly with the fact of multiple victims (by making it a factor which triggers an indeterminate term),[13] and subdivision (g) deals expressly with the facts of (1) a single victim on a single occasion, and (2) multiple victims on a single occasion (by making the former a factor which prohibits, and the latter a factor which permits, a separate indeterminate term), section 667.61 implicitly precludes using the fact of *multiple* victims on *multiple* occasions to impose a separate indeterminate term.[14]

This is a tortured and implausible reading of the statute. As defendant concedes, the trial court first must refer to section 667.61, subdivisions (a), (b), (c), (d), and (e) to determine whether a given count qualifies for an indeterminate term. If there are two or more such counts, it then must refer to subdivision (g) to determine whether it may impose more than one indeterminate term. Defendant would argue it may do so only if subdivision (g) expressly permits it to do so. Were it not for subdivision (g), however, *subdivision (a)* would permit the trial court to impose a separate indeterminate term for each qualifying sexual offense, *regardless* of the number of victims or occasions. Subdivision (g) *carves out* the commission of multiple offenses against a single victim on a single occasion, and, in that situation *only*, it limits the trial court to imposing a single indeterminate term. It does not prohibit the imposition of multiple indeterminate terms for multiple offenses committed against multiple victims on multiple occasions. Why would it? To the contrary, it implicitly permits such a sentence.

### b. *Dual Use of the Multiple Victim Circumstance.**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[13]Defendant does not dispute that the multiple victim circumstance may be used to impose multiple indeterminate terms for offenses against multiple victims on a *single* occasion. He plainly is *not* contending the multiple victim circumstance can *never* be used to impose multiple indeterminate terms for offenses against multiple victims, i.e., that it can be used only once in a case. We therefore assume, without deciding, that it can.

[14]Defendant similarly argues section 667.61, subdivisions (e)(5) and (g), implicitly precluded a separate indeterminate term on count 6 (rape by foreign object of Ana M.), because it involved the same victim on a different occasion than count 4 (forcible oral copulation of Ana M.).

*See footnote, *ante*, page 693.

F. *Unpleaded and Conflicting One Strike Circumstances.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### DISPOSITION

Defendant's conviction on count 2 (simple kidnapping of Ana M.) is reversed. Defendant's conviction on counts 9, 14, and 15 (assault with a firearm) is also reversed. Otherwise, the judgment as to conviction is affirmed.

The judgment as to sentence is reversed, due to the error in imposing a 25-year-to-life term on count 6 (rape by foreign object of Ana M.).

The People may retry defendant on counts 9, 14, and 15. If, however, the People fail to bring defendant to a new trial on these counts within 60 days (or, if defendant waives time, within any resulting longer time limit (see Pen. Code, § 1382)), or if the People elect, in a writing filed in the trial court, not to retry defendant, our remittitur shall be deemed to modify the verdict by striking the convictions on these counts, and the trial court shall promptly resentence defendant. (See *People* v. *Edwards* (1985) 39 Cal.3d 107, 118 [216 Cal.Rptr. 397, 702 P.2d 555]; *People* v. *Woods* (1992) 8 Cal.App.4th 1570, 1596 [11 Cal.Rptr.2d 231].) The case is remanded for retrial and/or resentencing.

Ramirez, P. J., and Hollenhorst, J., concurred.

### APPENDIX A*.

. . . . . . . . . . . . . . . . . . . . . . . . . .

Appellant's petition for review by the Supreme Court was denied January 28, 1998.

*See footnote, *ante*, page 693.