Filed 1/12/15  P. v. Serrano CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SERGIO DEJESUS SERRANO,<br><br>    Defendant and Appellant. | B253007<br><br>(Los Angeles County<br>Super. Ct. No. PA073875)<br><br> MODIFICATION OF OPINION<br><br>[NO CHANGE IN JUDGEMENT] |

THE COURT:

It is ordered that the opinion filed on December 19, 2014, be modified as follows:

On the caption page, change "Richard A. Levin" to "Richard A. Levy."

_____
COLLINS, J.                           EPSTEIN, P.J.                           MANELLA, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B253007 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. PA073875) |
| SERGIO DEJESUS SERRANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed in part, reversed in part and remanded with directions.

Richard A. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

During a single week in June 2012, Sergio DeJesus Serrano engaged in a crime spree against three women in separate incidents. As to Stephanie K., the jury convicted Serrano of kidnapping to commit rape (count 1; Pen. Code, § 209, subd. (b)(1));[1] kidnapping to commit sodomy (count 2; § 209, subd. (b)(1)); forcible rape (count 4; § 261, subd. (a)(2)); and attempted forcible sodomy (count 5; §§ 664/286, subd. (c)(2)(A)) and found true the allegations he personally used a deadly weapon (knife) (§§ 667.61, subds. (b), (e), 12022, subd. (b)(1), 12022.3, subd. (a)); he kidnapped her, substantially increasing the risk of harm (§ 667.61, subds. (a), (d)); and he committed forcible rape against more than one victim (§ 667.61, subds. (a), (e)).

As to Sandra L., the jury convicted Serrano of kidnapping to commit rape (count 6; § 209, subd. (b)(1)); kidnapping to commit oral copulation (count 7; § 209, subd. (b)(1)); kidnapping to commit robbery (count 10; § 209, subd. (b)(1)); three counts of forcible rape (counts 12-14; § 261, subd. (a)(2)); two counts of forcible oral copulation (counts 19 & 20; § 288a, subd. (c)(2)(A)); and robbery (count 25; § 211)) and found true the allegations he personally used a deadly weapon (rock) (§§ 667.61, subds. (b), (e), 12022, subd. (b)(1), 12022.3, subd. (a)); in the commission of the forcible rapes and forcible oral copulations, he kidnapped her, substantially increasing the risk of harm (§ 667.61, subds. (a), (d)); and he committed forcible rape and forcible oral copulation against more than one victim (§ 667.61, subds. (a), (e)).

As to Isabel O., the jury convicted Serrano of kidnapping to commit robbery (count 27; § 209, subd. (b)(1)); kidnapping to commit oral copulation (count 28; § 209, subd. (b)(1); kidnapping to commit carjacking (count 29; § 209.5, subd. (a)); carjacking (count 30; § 215)); forcible oral copulation (count 31; § 288a, subd. (c)(2)(A)); forcible rape (count 33; § 261, subd. (a)(2)); robbery (count 34; § 211));and kidnapping to commit rape (count 35; § 209, subd. (b)(1)) and found true the allegations he personally used a deadly weapon (knife) (§§ 667.61, subds. (b), (e), 12022, subd. (b)(1), 12022.3, subd.

---

[1]     All further section references are to the Penal Code.

2

(a)); in the commission of the forcible rape and forcible oral copulation, he kidnapped her, substantially increasing the risk of harm (§ 667.61, subds. (a), d)); and he committed forcible rape and forcible oral copulation against more than one victim (§ 667.61, subds. (a), (e)).

The trial court sentenced Serrano to 25 years to life on each of counts 4, 12, 19, 20, 31, and 33[2] and seven years to life, plus the one-year use enhancement (§ 12022, subd. (b)(1)), on each of counts 2, 10, 27, and 29. On each of counts 13 and 14, the court imposed a concurrent sentence of 25 years to life.[3] The court imposed and stayed (§ 654) a sentence of seven years to life, plus the one-year use enhancement (§ 12022, subd. (b)(1)), on each of counts 1, 6, 7, 28, and 35. On count 5, the court imposed and stayed (§ 654) the 10-year upper term, plus a 10-year use enhancement (§12022.3, subd. (a)). The court also imposed and stayed (§ 654) the nine-year upper term on count 30 and the five year upper term on each of counts 25 and 34.

On appeal, Serrano challenges the sufficiency of the evidence to support his convictions for kidnapping to commit robbery in counts 10 (Sandra L.) and 27 (Isabel O.) and for kidnapping to commit carjacking (count 29; Isabel O.). He also challenges the sufficiency of the evidence to establish a substantial increase in harm to Stephanie K. or Sandra L., an element of the one-strike aggravated-kidnapping circumstance, as to counts 4 (Stephanie K.), 12-14 (Sandra L.), and 19-20 (Sandra L.). He contends the trial court committed prejudicial error by failing to instruct the jury sua sponte (1) that each element of the crime of kidnapping to commit robbery in counts 10 and 27 had to be proven independently of Serrano's statement and (2) on the offense of attempted oral copulation,

---

[2] On each of these counts, the court also imposed a concurrent term of 25 years to life under the one-strike law (§§ 667.61, subds. (a)&(d)) and imposed and stayed a 10-year use enhancement (§12022.3, subd. (a)).

[3] On each count, the court also imposed a concurrent term of 25 years to life under the one-strike law (§ 667.61, subds. (a)&(d)), and imposed and stayed a 10-year use enhancement (§ 12022.3, subd. (a)).

3

a lesser included offense of the forcible oral copulation charged in count 31 (Isabel O.). He further contends the trial court committed reversible error by inviting the jury to "trust" the prosecutor as to a statement made in closing argument.

Additionally, Serrano challenges his sentence on the ground the trial court committed prejudicial error. He contends the court should have stricken his conviction for carjacking in count 30 (Isabel O.), which is a lesser included offense of the kidnapping during the commission of carjacking in count 29 (Isabel O.) instead of sentencing him on both counts. He also claims the court erred in imposing concurrent sentences instead of imposing and staying the sentences on counts 13 and 14, which were the second and third counts of forcible rape against Sandra L. Serrano further argues the court also erred in imposing use enhancements on both counts 27 and 29, which counts involved only one victim. Lastly, he asserts that, the court erred in awarding 532, instead of 533, days of precommitment custody credit.

Respondent concedes section 654 bars imposition of the one-year use enhancement on both counts 27 and 29 and Serrano is entitled to 533 days of custody credit. Acknowledging carjacking is a lesser included offense of kidnapping to commit carjacking, respondent concedes Serrano's carjacking conviction in count 30 (Isabel O.) must be reversed if we conclude the evidence supports his conviction of kidnapping of Isabel O. to commit carjacking (count 29).

We reverse Serrano's conviction in count 30 for carjacking. We also conclude that the trial court erred in imposing the one-year use enhancement on both counts 27 and 29 and in miscalculating Serrano's custody credits. We therefore reverse Serrano's sentences on counts 27 and 29 and his precommitment credit award and remand the matter for further proceedings. In resentencing on counts 27 and 29, the trial court is to impose the use enhancement on both counts 27 and 29 and stay execution of the enhancement as to one count. The court also is to amend the precommitment credit award to reflect 533 days, instead of 532 days, of custody credit. In all other respects, we affirm the judgment.

4

## BACKGROUND

1. *Stephanie K. (Counts 1, 2, 4, & 5)*

On June 15, 2012, at 11:00 p.m., while on her way home after a birthday party, Stephanie K. was walking on San Fernando Road near the railroad tracks when Serrano ran up from behind and held a knife to her throat. No one else was around. He pushed her to a dirt area which dipped before going up to the tracks and was "more secluded" from public view.

After pushing Stephanie K. to the ground on her stomach, Serrano pulled off her pants and underwear and inserted his penis in her vagina. When she struggled, he threatened "to slice [her] throat." Next he tried to insert his penis into her anus and then re-inserted his penis in her vagina and ejaculated.

Afterward, Serrano emptied the two purses Stephanie K. had been carrying and told her he knew she had money and that she "better give it" to him. He then told Stephanie K., who did not have any money, she was "lucky that he didn't slice [her] throat and kick [her] head into the ground." After telling her not to call the police, he ran off.

2. *Sandra L. (Counts 6, 7, 10, 12-14, 19, 20, & 25)*

On June 16, 2012, about 2:00 a.m., while heading to her boyfriend's house, 14-year-old Sandra L. was walking on the sidewalk of San Fernando Road when Serrano approached and asked for the time. While holding a six-inch rock in one hand, he grabbed her wrist with his other as she reached into her pocket for her cell phone to check the time. When he told her to "do what he says or he will smash the rock on [her] head," Sandra L. became numb from shock and "didn't really feel anything." Serrano pulled Sandra L. by her wrist to an area behind some bushes about 10 to 15 feet away from the sidewalk. Although the area was visible from the street, it was more secluded than where he had approached her initially. During his sexual assault on Sandra L., "[e]very time he would see or hear something, he would tell [her] to lower down a little bit or to hide more. Or to like scoot over more . . . because there was only bushes where . . . the

5

sidewalk was." So [they] would have to go more like in the corner. At one point, he put his sweater over her face.

After Sandra L. complied with his directive to lie on her stomach, Serrano removed her pants and underwear and, at some later point, her sweater, shirt, and bra. As she lay on her stomach, he "humped" her for about 20 minutes. He inserted his penis between her labia majora but not inside her vaginal opening. He then had her change positions, each time under threat that if she didn't comply "he would smash [her] head." After she lay on her side, he lifted her leg and continued "humping" her for about 5 minutes. She next got on her hands and knees, and he "hump[ed]" her from behind for about 15 to 20 minutes. As he lay on his back, he then had Sandra L. straddle him while his penis was in her vaginal area.

Serrano also wanted Sandra L. to do "oral things" and repeated his threat. After telling her to suck his "dick" and his "nuts," he put his penis and testicles in her mouth. He also put his mouth on her vagina, neck, and nipples.

He ejaculated on Sandra L.'s lower back and buttocks area and left. Upon his return about two minutes later, he looked through Sandra L.'s bag, removed her wallet, and took the single dollar inside before leaving again.

3. *Isabel O. (Counts 27-31, 33-35)*

On June 21, 2012, about 10:00 p.m., Isabel O., who had been grocery shopping at Vallarta Market on San Fernando Road, was on her way back to her parked car after returning the shopping cart when Serrano approached and asked for the time. After she denied having a watch, he looked around in all directions and pulled out a knife. Holding the knife to her abdomen, he told her to get into her car. She pleaded with him to "take [her] bag, [her] money," and her car but "to let [her] go." After he made her get into the passenger seat, he sat in the driver's seat and demanded the car keys.

Serrano started the car, put the car in reverse, and stopped the car while still in the parking lot. After pulling down his shorts, exposing his penis, he told Isabel O. to

6

perform oral sex. When she refused, he grabbed her head; forced her mouth on his penis; and pushed her head down two or three times.

He then drove to a dark street and parked. After moving to the passenger seat, he tried to remove Isabel O.'s dress. She resisted. Making a fist, he threatened to beat her up if she did not do what he wanted. She again resisted when he resumed trying to take off her dress. He then grabbed the knife and passed the blade from her clavicle down her arm before pulling up her dress, removing her underwear, and inserting his penis in her vagina where he ejaculated.

Afterward, Serrano first told Isabel O. he would return her to where he had abducted her. He then said she "should give him money because he was going to . . . buy beer. And that [she] was going to go with him." She gave him her $10, and he drove to a 7-Eleven. While he was inside, Isabel O. was able to escape to a nearby restaurant where she saw Serrano drive her car past.

4. *Serrano's Police Interview*

On June 22, 2012, about 12:30 a.m., after waiving his *Miranda* rights,[4] Serrano admitted he approached a woman at the Vallarta Market, pulled out a knife, and forced her into a car. He stated he was drunk and thought she was a prostitute. When asked if she gave him a "blow job," Serrano responded: "I tried to make her, but she didn't want to cause I was driving . . ." He told her four or five times to give him "head and she wouldn't so [I'm] like, Okay. We'll park[.]" While driving, he grabbed her head and tried to force her to orally copulate him.

After parking across the street from a 7-Eleven, Serrano "ha[d] [his] way," i.e., vaginal sex, with Isabel O. She told him: "If you wanted sex, all you had to do was ask . . . and [she] would have done it. There's just no need for violence."

---

[4]    *Miranda v. Arizona* (1966) 384 U.S. 436.

Serrano next drove to the 7-Eleven where Isabel O. said she wanted to "do it" again. She gave him money to buy condoms, cigarettes, and beer. She was gone when he exited the store.

When asked about the previous Saturday, June 16, 2012, Serrano stated he "[g]ot some crystal meth. Smoked . . . and then . . . got so high. Just felt angry at all the prostitutes and I saw a girl walking–she looked like a prostitute and so I . . . attacked her." He threatened her with a rock and wanted "to have [his] way with her and take her money." When he told her to "suck [his] dick," she complied. He then "had [his] way with her for a long time" and did "[e]verything you could probably think of," i.e., vaginal sex, anal sex, and he "went down on" her. When she said to "go down on her, [he] did. And then she said she wanted to get on top, so she did."

When asked if he remembered another girl earlier that night, Serrano responded affirmatively. He stated she also was a prostitute. When asked what happened, he stated: "[S]he complied with everything . . . I threatened her with a knife and I told her if she did what I wanted to I would leave her alone." He stated he had vaginal and anal sex with her and she gave him "head."

As to all three victims, Serrano stated he wanted to "take their money for what they were doing" and to "have the sex so [he] could . . . prove sex for money." He explained he "was going to take [their] money and . . . take [their] sex."

DISCUSSION

1. *Standard of Review – Sufficiency of Evidence Challenge*

"The corpus delicti may be proved by direct or circumstantial evidence as well as by other acts evidence. [Citation.]" (*People v. Huynh* (2012) 212 Cal.App.4th 285, 301.) "[D]irect evidence, unlike circumstantial evidence, does not generate conflicting inferences. '"Circumstantial evidence involves a two-step process—first, the parties present evidence and, second, the jury decides which reasonable inference or inferences, if any, to draw from the evidence—but direct evidence stands on its own. So as to direct

8

evidence no need ever arises to decide if an opposing inference suggests innocence.'" [Citation.]" (*People v. Lucas* (2014) 60 Cal.4th 153, 298-299.)

In a challenge to the """"sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citations.] "[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." [Citation.] "In a case, such as the present one, based upon circumstantial evidence, we must decide whether the circumstances reasonably justify the findings of the trier of fact, but our opinion that the circumstances also might reasonably be reconciled with a contrary finding would not warrant reversal of the judgment. [Citations]." [Citation.]'" (*People v. Foster* (2010) 50 Cal.4th 1301, 1348 (*Foster*).)

2. *Substantial Evidence of Count 29 Facilitation Element*

Serrano contends the evidence is insufficient to support his conviction of kidnapping to commit carjacking (count 29; Isabel O.), because he already had Isabel O.'s car keys before he began to asport her and therefore did not need to kidnap her in order to facilitate the carjacking. He points out (and respondent acknowledges) the prosecutor's closing argument that Serrano "couldn't move the car" without Isabel O. because she was "the one who had the keys" is not evidence. He challenges respondent's theory on appeal that Serrano kidnapped Isabel O. partly "to facilitate his escape" and to prevent her from "return[ing] to the market and call[ing] the police." He contends this theory is based on speculation, which is not evidence, and is not a cognizable ground for finding facilitation, because the jury was not instructed on this theory. We are not persuaded. Substantial evidence supports the jury's finding Serrano kidnapped Isabel O. to facilitate the carjacking.

Kidnapping during a carjacking occurs when a person "during the commission of a carjacking and in order to facilitate the commission of the carjacking, kidnaps another person who is not a principal in the commission of the carjacking. . . ."[5] (§ 209.5, subd. (a).) "Regarding a specific intent element of a crime, [our Supreme Court] has explained that '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]' [Citation.]" (*People v. Manibusan* (2014) 58 Cal.4th 40, 87.)

The record contains no direct evidence Serrano kidnapped Isabel O. in order to carjack her car. On the other hand, the evidence established that when Serrano accosted Isabel O. at knifepoint, she had just bought groceries in the market, which signified at least one sales person was still inside. The carjacking was complete when Serrano drove the car and stopped while still in the market's parking lot.[6] He then drove the car away from the carjacking location, taking Isabel O. with him. From such evidence, the jury was entitled to infer one reason he did this was to prevent her from returning to the store and reporting he had absconded with her car.[7] (*People v. Perez* (2000) 84 Cal.App.4th 856, 860-861 [substantial evidence of kidnapping to commit carjacking where intent in

---

[5]     "'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

[6]     "[A] completed carjacking occurs whether the perpetrator drives off with the carjacking victim in the car or forcibly removes the victim from the car *before* driving off. [Citations.]" (*People v. Lopez* (2003) 31 Cal.4th 1051, 1062.) ""[S]light movement" is enough. . . ." (*Id*. at pp. 1060, 1062-1063.) "Whether [the defendant] conveyed [the car] one yard or one mile . . . is immaterial." (*People v. Clark* (1945) 70 Cal.App.2d 132, 133.)

[7]     On the issue of facilitation, the jury was instructed the prosecution had to prove Serrano "moved or caused [Isabel O.] to move with the intent to facilitate the carjacking." The jury was expressly instructed its duty was to "decide what the facts are in this case"

kidnapping is to prevent sounding of alarm].)  That Serrano also may have entertained additional motives in kidnapping her, e.g., to commit various sexual attacks and robbery, does not compel a contrary conclusion.  (*People v. Jones* (1997) 58 Cal.App.4th 693, 718 (*Jones*).)

   3.  *Reversal of Carjacking Conviction (Count 30; Isabel O.) Mandated*

As to Isabel O., Serrano was convicted of both kidnapping to commit carjacking in count 29 (§ 209.5) and carjacking (§ 215) in count 30, a necessarily included offense. Respondent concedes that Serrano's conviction of count 30 should be reversed.  We agree and reverse.  (*People v. Contreras* (1997) 55 Cal.App.4th 760, 762.)

   4.  *Substantial Evidence of Intent to Rob as to Counts 10 and 27*

Serrano was convicted of kidnapping to commit robbery of Sandra L. in count 10 and of Isabel O. in count 27.  He contends the evidence is insufficient to establish the corpus delicti of this crime, because there is no evidence Serrano entertained the specific intent to rob at the time of the initial asportation, independent of his admission in the police interview.  We find the evidence to be substantial.

Aside from Serrano's admission that he intended to steal from each of the three victims when he kidnapped her, substantial circumstantial evidence supports such intent.[8]

---

based on the evidence presented; "[n]othing that the attorneys say is evidence; and "[i]n their opening statements and closing arguments, the attorneys will discuss the case, but their remarks are not evidence."  Serrano cites no authority for the proposition the prosecution's closing argument foreclosed the jury from finding the requisite intent based on the evidence presented and the reasonable inferences to be drawn from such evidence. (Cf. *People v. Nunez* (2013) 57 Cal.4th 1, 38 [[Not] "dispositive that the prosecutor asserted '[t]he last element of that gang allegation is that this crime was committed for the benefit of that gang' [where] court had already instructed the jury before closing argument that '[i]f anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions[]'"]).

[8]     The jury was instructed that "[a]n intent or mental state may be proved by circumstantial evidence."  Serrano contends in view of the instruction that the jury also "must consider each count separately," except for sex-crime propensity evidence, the jury

11

He does not contend he did not intend to rob Stephanie K. when he first accosted her at knifepoint and moved her to a dirt area near the railroad tracks. After his sexual assaults on her, he said he knew she had money and demanded it. Similarly, after his sexual attacks on Sandra L., he left and returned about two minutes later, searched her wallet for money, and took the sole dollar in her wallet. This pattern continued with Isabel O. After his sexual assaults, he demanded money and took her $10.

Intent to rob in kidnapping each victim thus was established by evidence of Serrano's pattern of accosting lone females at night time in deserted areas and forcibly demanding their property. (See *Foster, supra*, 50 Cal.4th 1301, 1348-1349 [intent to commit larceny inferred based on circumstances of crime, i.e., shortly after entering building defendant stole victim's belongings, and his "pattern of entering offices and violently robbing solitary women"]; *Jones, supra*, 58 Cal.App.4th 693, 718 ["preexisting specific intent to commit the sexual offenses" where defendant and "accomplice later kidnapped and committed similar sexual offenses against" another victim].)

That Serrano left and returned two minutes later before demanding and taking Sandra L.'s money does not dispel the existence of such intent. The record does not indicate where Serrano went and what he did. Also, the lapse of two minutes is de minimis. An inference might be drawn he was making his escape and, as an afterthought, decided to rob her and therefore returned. It is equally likely he was reconnoitering the general area to ensure the absence of potential witnesses. In finding Serrano had the

_____

was required to consider the evidence as to each victim independent of and isolated from the evidence pertaining to any other victim. That the jury was required to "consider each count separately and return a separate verdict for each [with certain exceptions not relevant here] does not inform the issue of what evidence the jury may and may not take into account or preclude the jury from taking into all the evidence presented at trial, unless directed otherwise. Moreover, the instruction permitting the jury to consider its determination that Serrano committed one of the enumerated charged sex offenses as evidence of his propensity to commit other enumerated sex offenses does not lead to the conclusion that, unless instructed otherwise, the jury cannot consider the evidence of another victim in deciding whether Serrano committed the crime alleged against the victim in a particular count.

intent to rob at the moment of asportation, the jury presumably drew the latter inference. It is not for this court to substitute a different inference, even if that inference also is reasonable.

As for Isabel O., the jury was entitled to infer Serrano's intent was to take whatever property of value she had at the moment he accosted her. Although the property taken in carjacking specifically is the victim's vehicle and carjacking is a separate offense from robbery, both crimes involve the felonious taking of property from the victim. (See *Foster, supra*, at p. 1349 [that "evidence also may support other scenarios does not render insufficient the evidence supporting the verdict"].) The specific intent to rob is not negated because Serrano first told Isabel O. he would take her back to where he had abducted her and *then* told her to give him money to buy beer and that she was going to go with him. These two statements are not inconsistent or contradictory. He did not specify *when* he would return her to where he picked her up, at once or after some other event(s).

We further conclude Serrano's intent to rob Sandra L. and Isabel O. at the moment of asportation is not negated by the existence of his intent to commit sexual assaults on these victims at that same moment. (*Jones, supra*, 58 Cal.App.4th at 693, 718 [that defendant kidnapped victim "with the additional intent to commit robbery, and perhaps the intent to commit carjacking, . . . irrelevant" to his preexisting specific intent to commit the sexual offenses" because "[h]e could have kidnapped [her] with the specific intent to commit multiple crimes"].)

5. *Corpus Delicti Instruction on Counts 10 and 27 Proper*

Serrano contends CALCRIM No. 359 (the corpus delicti rule) failed to inform the jury that each element of the crime must been proved independent of his statements and that the trial court committed prejudicial error in failing to instruct sua sponte on this requirement. No error transpired.

In pertinent part, CALCRIM No. 359 provided: "The defendant may not be convicted of any crime based on his out-of-court statements alone. You may only rely on

13

the defendant's out-of-court statements to convict him if you conclude that other evidence shows that the charged crime, or a lesser included offense, was committed. That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed."

CALCRIM No. 359 correctly states the law. (See, e.g., *People v. Rosales* (2014) 222 Cal.App.4th 1254, 1261; but see *People v. Rivas* (2013) 214 Cal.App.4th 1410, 1427-1429.) We find persuasive the reasoning of the court in *People v. Reyes* (2007) 151 Cal.App.4th 1491, which rejected the contention Serrano makes here. The court reasoned: "Under CALCRIM No. 359, a jury may not consider a defendant's out-of-court statement unless the jury concludes that 'other evidence shows that the charged crime . . . was committed.' A crime consists of specified elements; if evidence of any of the requisite elements is lacking, a defendant has not committed a crime. There is no difference between an instruction that cautions that there must be evidence on each element of the charged crime and one that cautions that there must be evidence that a crime was committed. These phases describe the same set of requirements." (*Id*. at p. 1498.)

6. *Substantial Evidence of Increase of Risk of Harm as to Counts 4, 12-14, 19-20*

Serrano challenges the aggravated kidnapping finding (§ 667.61, subd. (d)(2)) as to his forcible rape convictions in counts 4 (Stephanie K.) and 12 through 14 (Sandra L.), and his forcible oral copulation convictions in counts 19 and 20 (Sandra L.) He contends there was insufficient evidence to establish that his asportation of each victim substantially increased the risk of harm to her. We disagree.

The aggravated kidnapping circumstance requires movement of the victim which substantially increases *the risk of harm* over and above that necessarily present in the underlying sexual offense. (§ 667.61, subd. (d)(2), italics added.) "[T]he 'risk of harm' element focuses on the movement of the victim during the kidnapping, and the resulting risk of harm. The jury is to consider 'such factors as the decreased likelihood of

14

detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. (See, e.g., *People v. Lara* [(1974) ] 12 Cal.3d [903,] 908 & fn. 4 [examples of such risk of harm "'include not only desperate attempts by the victim to extricate himself but also unforeseen intervention by third parties'"]; *In re Earley* [ (1975) ] 14 Cal.3d [122,] 132 ['asportation gave rise to dangers, not inherent in robbery, that an auto accident might occur or that the victim might attempt to escape from the moving car or be pushed therefrom by defendant']; cf. *People v. Caudillo* (1978) 21 Cal.3d 562, 574 [aggravated kidnapping includes review of such factors as 'the defendant's motivation to escape detection' and 'the possible enhancement of danger to the victim resulting from the movement.'].)" [Citation.])

"'[A]ny substantial asportation which involves forcible control of the . . . victim' will satisfy the '"risk of harm"' test. [Citation.] Accordingly, '[t]he "risk of harm" test is satisfied when the victim is forced to travel a substantial distance under the threat of imminent injury by a deadly weapon. [Citation.]' [Citations.] On the other hand, when a defendant 'does no more than move his victim around inside the premises in which he finds [the victim],' the movement generally will be deemed insufficient. [Citation.]" (*Jones, supra*, 58 Cal.App.4th 693, 713-714.)

Stephanie K. was walking along a road when Serrano approached from behind and held a knife to her throat. He then forced her to move to an area which was "like a little dip" near the railroad tracks and "more secluded" from public view. At this less open spot he commenced and continued his sexual assaults on Stephanie K. for about a three-hour period. "[M]oving a victim to a more isolated open area which is less visible to public view is sufficient." (*People v. Aguilar* (2004) 120 Cal.App;.4th 1044, 1049.)

Similarly, Serrano's sexual attacks on Sandra L. took place over an extended period of time, from 2:00 a.m. until about 7:00 a.m. She was walking on the sidewalk along the same road when he approached, and threatened to smash her head with a rock, and forced her to move about 10 to 15 feet away to an area of bushes. Although this area was visible from the street, it was more secluded than her original location. Additionally,

15

an inference arises this area was sufficiently concealed for Serrano's criminal purposes, because he did not cease his attacks when someone passed or he thought someone was around.  Rather, "[e]very time he would see or hear something, he [merely told] her to lower down a little bit or to hide more.  Or to like scoot over more[.]"

### 7. *Omission of Attempt Instruction on Count 31 Not Error*

Serrano contends the trial court committed prejudicial error by failing to instruct sua sponte on attempt as a lesser included offense of the oral copulation charged in count 31 (Isabel O.)  There was no error.

Generally speaking, the commission of a crime necessarily includes an attempt to commit that crime and for this reason that attempt is a lesser included offense of the completed crime.  This "general principle," however, "is not applicable . . . where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense."  (*People v. Bailey* (2012) 54 Cal.4th 740, 752-753.)  We conclude attempted oral copulation is a lesser included offense of oral copulation, a general intent crime.  (See *People v. Warner* (2006) 39 Cal.4th 548, 557 [oral copulation general intent crime]; see also *People v. Atkins* (2001) 25 Cal.4th 76, 88 [attempted rape a lesser included offense of rape, a general intent crime].)

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.]' [Citation.]  'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation] . . .' [Citation.]"  (*People v. Smith* (2013) 57 Cal.4th 232, 239.)  "'[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' [Citation.]"  (*Id.* at

16

p. 240.) Moreover, "a trial court is not required to instruct the jury on a necessarily included lesser offense 'when there is no evidence that the offense was less than that charged.' [Citation.]" (*Id*. at p. 245.)

"For a sua sponte instruction on attempt to be required . . ., there must be 'evidence that a reasonable jury could find persuasive' on the point. [Citation.]" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1455.) In other words, "'substantial [evidence] enough to merit consideration' by the jury" must exist "'from which a jury composed of reasonable [persons] could… conclude[]'" that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

"'[A]ny contact, however slight, between the mouth of one person and the sexual organ of another person constitutes oral copulation. Penetration of the mouth or sexual organ is not required. Proof of ejaculation is not required.'[].)[]" (*People v. Dement* (2011) 53 Cal.4th 1, 41-42, fn. omitted.) The evidence establishes Serrano either committed forcible oral copulation on Isabel O., or he was not guilty. Isabel O. testified the incident occurred after Serrano started her car, put it in reverse, and stopped the car while still in the market parking lot. When Isabel O. refused his demand for oral sex, he grabbed her head with his hand and "bent [it] down" toward him, causing her mouth to contact his penis, which went inside her mouth. Each time he pushed her head down, his penis went deeper into her mouth.

Contrary to Serrano's claim, no evidence supported instruction on attempted oral copulation. In his police interview, when asked if Isabel O. gave him "a blow job," he responded: "I tried to make her, but she didn't want to 'cause I was driving" and explained while he was driving, he grabbed Isabel O. by her head to try to force her to orally copulate him. Serrano's statements concerned an uncharged incident which transpired while he was driving, not the charged incident which occurred when the car was stopped while still in the parking lot.

17

8. *No Judicial Misconduct Shown*

Serrano contends that the trial court committed prejudicial misconduct by vouching for the prosecutor's credibility. No misconduct transpired.

During closing argument, the prosecutor argued Serrano "accomplished the intercourse [with Sandra L.] by force, violence or fear of immediate bodily injury [while] holding up this heavy rock. I know you guys haven't held it yet, but trust me, it's heavy. Holding up this rock. Threatening somebody." Following defense counsel's objection, this colloquy ensued:

"THE COURT: I don't want you to trust Ms. Lee [the prosecutor]. [¶] I mean, you can. But her statements, once again, that's not evidence. You make the factual determinations in the case. [¶] If you want to pass that rock around, I will let you do it right now. [¶] [THE PROSECUTOR:] Yes. Thank you. [¶] THE COURT: And now the jury can make that determination themselves. [¶] Very good. Ms. Lee has now regained possession of the rock."

The prosecutor's brief comment, "trust me, it's heavy," merely referred to the weight of the rock and did not constitute an invitation to the jury to "accept" the prosecutor's claim the rock was heavy rather than deciding for themselves whether the rock was heavy. In telling the jury it could "trust me," the prosecutor was employing the definition of trust in the sense of "to believe that someone . . . is reliable, good, honest, effective, etc.: to have confidence in (someone . . .)" rather than to believe that something is true or correct. The trial court thus did not commit misconduct by vouching for the prosecutor's credibility. (See *People v. Seaton* (2001) 26 Cal.4th 598, 635.)

Any possible inference of vouching was dispelled by the court's express instruction that the prosecutor's "statements, once again, that's not evidence" and its directive that the jury was the one to "make the factual determination in the case." The jury is presumed to have understood and adhered to the court's instruction. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Moreover, in conjunction with this admonition, the

18

court caused the rock to be passed among the jurors and afterward commented: "And now the jury can make that determination themselves."

9. *Section 654 Inapplicable to Forcible Rape Convictions in Counts 13 and 14*

Serrano contends the trial court erred in imposing concurrent terms on counts 13 and 14 instead of imposing and staying the sentences on those counts pursuant to section 654. We disagree.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." Section 654 protection "has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.2d 321, 335 (*Harrison*).)

Section 654 does not apply if "'[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental' to any other." (*People v. Perez* (1979) 23 Cal.3d 545, 553-554.) Accordingly, if the "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*Harrison, supra*, at p. 335.)

The jury found Serrano guilty of three counts of forcible rape against Sandra L. Each count pertained to a rape while Sandra L. was in a different position. She was on her stomach in Count 12; on her side in Count 13; and on her hands and knees on Count 14. Each position change was accompanied by a threat of violence, i.e., he would "smash [her] head" with the rock. "[T]here is no legal or logical bar to separate punishment where, as here, *each of defendant's 'repenetrations' was clearly volitional, criminal and*

19

*occasioned by separate acts of force.*"**9** (*Harrison, supra*, 48 Cal.3d 321, 338, original italics.)

  10. *Bar of Section 654 Applicable to Use Enhancements on Counts 27 & 29*

  Serrano contends, and respondent concedes, that the one-year use enhancement is applicable to both count 27 (Isabel O.; kidnapping to commit robbery) and count 29 (Isabel O.; kidnapping to commit carjacking), but that the one-year use enhancement imposed on one of these counts must be stayed pursuant to section 654.  We agree.

  On each of counts 27 and 29, the trial court imposed consecutive terms of seven years to life, plus the one-year use enhancement.  After imposing one use enhancement, the court should have imposed and stayed the other enhancement pursuant to section 654, which applies to bar double punishment for Serrano's single act of brandishing a knife to facilitate the asportation of Isabel O. during these offenses.  "A single criminal act, even if committed incident to multiple objectives, may be punished only once." (*People v. Louie* (2012) 203 Cal.App.4th 388, 397.)  We therefore reverse Serrano's sentences on counts 27 and 29 and direct that on remand, in resentencing on these counts, the trial

---

**9**   Serrano contends the court in *Harrison* "allowed multiple punishment for a series of sex crimes where there were 'intervening acts of force' and repenetration, *provided that* the initial offense was interrupted by the victim's struggle" and that this last requirement that the sex acts be interrupted by the victim's struggles is missing here. The *Harrison* court did not impose such a requirement. (*Id*. at p. 338.)

  We note in *People v. Correa* (2012) 54 Cal.4th 331, the court disapproved footnote 1 in *Neal v. State of California* (1960) 55 Cal.2d 11, 18, which read: "Although section 654 does not expressly preclude double punishment when an act gives rise to more than one violation of the same Penal Code section or to multiple violations of the criminal provisions of other codes, it is settled that the basic principle it enunciates precludes double punishment in such cases also. [Citations.]" The *Correa* court held: "*By its plain language section 654 does not bar multiple punishment for multiple violations of the same criminal statute*. Contrary dictum in a footnote to (*Neal),* is disapproved." (*Correa, supra*, at p. 334, italic*s* added.)  This holding is prospective only. (*Ibid*.)  *Correa*, decided June 21, 2012, therefore is factually inapplicable to this appeal which concerns crimes committed that same date or earlier.

court is to impose the one-year use enhancement on either count 27 or 29 and, on the other count, impose and stay that enhancement.

11. *Serrano Entitled Award of 533, Not 532, Custody Days*

The trial court awarded 611 days of precommitment credit, consisting of 532 days custody credit and 79 days conduct credit. Serrano contends, and Respondent concedes, he is entitled to 533, not 532 days, of custody credit. We agree and reverse the precommiment credit award and direct the trial court on remand to correct the award to reflect 533 days of custody credit.

## DISPOSITION

The judgment of conviction is reversed as to the conviction of carjacking of Isabel O. in count 30 (§ 215). Serrano's sentences on counts 27 and 29 and his precommitment credit award are reversed. On remand, in resentencing on counts 27 and 29, the trial court is directed to impose the one-year use enhancement on either count 27 or 29 and, on the other count, impose and stay that enhancement. The court also is directed to amend Serrano's precommitment credit award to reflect 533, not 532, days of custody credit. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.