Filed 7/21/16  P. v. Morales CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B264847 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA092058) |
| v. | |
| MARIO MORALES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Lowenthal, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Wyatt E. Bloomfield, Deputy Attorney General, for Plaintiff and Respondent.

**INTRODUCTION**

A jury convicted defendant and appellant Mario Morales of forcible rape (Pen. Code, § 261, subd. (a)(2)[1]) and found true the allegations that in the commission of the rape, defendant used a deadly weapon (a knife) (§ 12022.3, subd. (a)); kidnapped the victim and the movement of the victim substantially increased the risk of harm to the victim (§ 667.61, subds. (a) & (d)); and kidnapped the victim, personally used a deadly or dangerous weapon, and tied or bound the victim (§ 667.61, subds. (a) & (c)). Defendant admitted that he suffered a prior conviction under the Three Strikes law (§§ 667, subs. (b)-(i) & 1170.12, subds. (a)-(d)), a prior serious felony conviction (§ 667, subd. (a)(1)), and three prior convictions for which he served a prison term (§ 667.5, subd. (b)). The trial court sentenced defendant to 67 years to life in state prison. On appeal, defendant contends that his rape prosecution was barred by the 10-year statute of limitations in section 801.1, subdivision (b), and the trial court violated his right to due process when it admitted evidence of a prior sexual assault. We affirm.

**BACKGROUND**

**I.      Marlene T.'s (Marlene) Testimony**

In October 2001, Marlene lived in Long Beach with her fiancé and worked as a caregiver. The night of October 30, 2001, Marlene worked on a caregiver assignment a couple of blocks from her home. When she finished the assignment and started walking home, defendant, who was in a car, asked her if she needed a ride. Marlene accepted a ride because she was cold.

As defendant drove Marlene home, she told defendant to drive "one way and he went another way." Marlene became scared. Defendant pulled into a church parking lot. He blindfolded Marlene, put a knife to her throat, and threatened to kill her if she screamed. Marlene believed defendant was going to kill her and said, "Don't hurt me." She was afraid, and did not try to escape.

---

[1]      All statutory citations are to the Penal Code unless otherwise noted.

Defendant held the knife to Marlene's throat and raped her. Defendant then drove from the parking lot and told Marlene that if she called the police, he would kill her. At some point, defendant put his foot against Marlene's body, kicked her out of the car, and drove away. Marlene removed the blindfold, pulled up her pants, and ran home.

When Marlene arrived home, she called the police. A police officer arrived a short time later, and Marlene reported the rape. The police officer took Marlene to a hospital "to do a rape kit."

A few months after the rape, Marlene moved to Nevada. There, about four years later, she suffered two misdemeanor convictions for prostitution and one misdemeanor conviction for writing a check without sufficient funds.

## II.     The Sexual Assault Examination and Subsequent DNA Analysis

Susan Gorba was a registered nurse and a certified sexual assault nurse examiner. Around 4:40 a.m., on October 30, 2001, she interviewed and examined Marlene. Marlene complained of genital pain. According to Gorba, Marlene appeared to remember well what had happened and provided details of the rape. Marlene informed Gorba that she had sex with her "partner" the day before.

Gorba's physical examination revealed that Marlene's labial area was swollen and tender. Gorba took internal and external swabs of Marlene's vagina. Gorba put material from an internal vaginal swab onto a slide that she viewed with a microscope. Gorba observed sperm with tails that indicated to her that the assault had happened within hours and not days. Gorba prepared the swabs for packaging in the rape kit and gave the kit to Long Beach Police Department Detective Michael Pennino. Pennino booked the rape kit into evidence. On December 23, 2009, Long Beach Police Department Detective Hector Nieves transported the rape kit to the Los Angeles County Sheriff's Department crime lab.

For a substantial period of time thereafter, Marlene's rape case was considered a "cold" case. In February 2010, Melissa Murphy, a Senior DNA Analyst 1 at Bode Technology in Lorton, Virginia, received Marlene's rape kit or samples from the rape kit.

3

In October 2011, the case was reopened after there was a DNA "hit" with a potential suspect. On November 22, 2011, Long Beach Police Department Officer Mike Solomita took a buccal swab from defendant's mouth. In January 2012, Murphy received the buccal swab taken from defendant.

Murphy testified that the rape kit sample taken from Marlene's external genitals contained a DNA mixture of three or more individuals, including a major male contributor. The overwhelming majority of the sample belonged to the major male contributor. Murphy created a DNA profile for the major male contributor. Defendant's DNA profile matched the major male contributor's DNA profile. Murphy explained that the probability of randomly selecting a person from the United States Hispanic population whose DNA profile matched the major male contributor was one in one quintillion. One quintillion has 18 zeros; one billion has nine zeros. Murphy testified, within a reasonable degree of scientific certainty, that defendant was the source of the DNA obtained from the sample from Marlene's external genitalia.

The DNA profile for the major male contributor to the sample obtained from Marlene's vagina matched defendant's DNA profile to a statistical certainty that exceeded the statistical certainty that defendant contributed the external vaginal sample. The probability of selecting a match from the United States Hispanic population was one in two sextillion. One sextillion has 21 zeros, or three more zeros than one quintillion. Murphy testified, within a reasonable degree of scientific certainty, that defendant was the source of the DNA obtained from the sample from Marlene's vagina.

### III. Evidence of Defendant's 1992 Rape of Jaime M. (Jaime)

Around 2:00 a.m. on July 18, 1992, Jaime was at a payphone in Long Beach. Defendant pulled up in a blue Gran Torino. Defendant asked, "Are you okay? Do you need a ride?" By that time, Jaime had been walking for some time and was tired. She was trying to meet a friend at an establishment called "Spires" that was quite a few blocks away. Jaime accepted a ride from defendant.

4

Defendant drove Jaime to the Spires, but her friend was not there. Defendant seemed nice, so Jaime went with him to the Paramount area of North Long Beach to drive around and hang out. Jaime asked defendant if he liked to party. At some point they stopped and ingested "speed."

Later, defendant stopped and parked his car on the side of a house at 70th and Paramount. He said he was going to get work clothes. Defendant approached the house's back door and "play[ed]" with the doorknob, but did not enter the house. Defendant returned to the car, went to the trunk, and got in the car.

Defendant drove down an alley to the railroad tracks behind AJ Wholesales. Jaime became concerned and started to smoke a cigarette. She tried to roll down the window, but defendant objected. "That's when [defendant] turned into a monster." Jaime tried to figure out how to get out of the car.

Defendant took out a large, industrial size, screwdriver. He held the screwdriver to Jaime's neck, and told her he was going to have sex with her. Jaime was scared and tried to talk defendant "out of it" and "begged him not to." Defendant told Jaime to take off her clothes. She complied because she was afraid defendant was going to stab her in the neck.

Against Jaime's will, defendant raped her. While defendant was raping Jaime, he wanted to know if she was scared. After he raped Jaime, defendant drove two blocks down the alley and used his foot to kick Jaime out of the car.

Jaime immediately called the police and reported the rape. She could not tell the police the name of the person who raped her or where the person lived or worked, but she was able to describe his car and provide a couple of the car's license plate numbers. The police took Jaime to a hospital for a sexual assault examination.

On July 30, 1996, Long Beach Police Department Officer Andre Sanchez observed his partner, Officer Aaron Alu, search a blue Gran Torino. Alu recovered a long, flathead screwdriver from the driver's seat. Alu also recovered documents in defendant's name from the car.

## DISCUSSION

### I.    Statute of Limitations

Marlene's rape was committed on October 30, 2001.  The complaint in this case was filed on May 8, 2012, more than 10 years after the rape.  Defendant contends that his prosecution and conviction for forcible rape therefore were barred by the applicable 10-year statute of limitations in section 801.1, subdivision (b), and the prosecution did not successfully invoke the tolling provisions in section 803, subdivision (g)(1).  The Attorney General concedes that the prosecution filed the forcible rape charge outside of the 10-year statute of limitations in section 801.1, subdivision (b) and did not establish the predicates of the tolling provision, but argues, under section 799, that there was no statute of limitations for the forcible rape charge in this case because the offense as committed was punishable by life in prison under the One Strike law[2] sentencing scheme. We agree with the Attorney General.

"The People must plead and prove, by a preponderance of the evidence, that prosecution commenced within the statutorily prescribed time period." (*People v. Angel* (1999) 70 Cal.App.4th 1141, 1146-1147.)  "[I]f the charging document indicates on its face that the charge is untimely, absent an express waiver, a defendant convicted of that charge may raise the statute of limitations at any time." (*People v. Williams* (1999) 21 Cal.4th 335, 338.)

A violation of section 261, subdivision (a)(2) is subject to the 10-year statute of limitations in section 801.1, subdivision (b).  (*In re White* (2008) 163 Cal.App.4th 1576, 1580.)  Section 799, however,  provides in part that the "[p]rosecution for an offense punishable by death or by imprisonment in the state prison for life . . . may be commenced at any time."  "For the purpose of determining the applicable limitation of time pursuant to this chapter:  [¶]  (a) An offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually

---

[2]    "Section 667.61, which provides indeterminate sentences for felony sex crimes committed under particular circumstances, is sometimes called the 'One Strike' law." (*People v. Anderson* (2009) 47 Cal.4th 92, 99.)

sought or imposed. Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense." (§ 805, subd. (a).)

In addition to finding defendant guilty of forcible rape, the jury also found true the special allegation that in the commission of the rape defendant kidnapped Marlene and his movement of Marlene substantially increased the risk of harm to the her. (§ 667.61, subd. (d)(2).) Thus, under the One Strike law, defendant's punishment for Marlene's rape was 25 years to life in prison. (§ 667.61, subds. (a), (c), & (d)(2).) Because the prosecution for an offense punishable by life in prison "may be commenced at any time" under section 799, the prosecution timely filed its case against defendant.

Defendant argues that the One Strike law is an enhancement, and thus is subject to section 805, subdivision (a)'s limiting provision that "[a]ny enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense." Instead, the One Strike law as pleaded and proved in this case is an alternate sentencing scheme for which there is no statute of limitations. (*People v. Perez* (2010) 182 Cal.App.4th 231, 239-240.) Our Supreme Court explained the difference between enhancements and alternate sentencing schemes in *People v. Acosta* (2002) 29 Cal.4th 105 at pages 118-119 as follows: "[T]the One Strike law is not . . . a sentence enhancement. 'A sentence enhancement is "an *additional term* of imprisonment added to the base term." (Cal. Rules of Court, rule 405(c), italics added.)' ([*People v.*] *Jefferson* [(1999)] 21 Cal.4th [86,] 101 [(*Jefferson*)].) The 25-year minimum term of the One Strike law 'does not fall within [this] definition of an enhancement, because it is not an "additional term of imprisonment" and it is not added to a "base term."' (*Ibid.* [holding that 15-year minimum term under § 186.22, subd. (b)(4), is not an enhancement].) Rather, it 'sets forth an *alternate* penalty for the underlying felony itself, when the jury has determined that the defendant has satisfied the [statute's] conditions. . . .' (*Jefferson, supra,* 21 Cal.4th at p. 101.) Thus, the One Strike law does not establish an enhancement, but 'sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes' when a defendant commits one of those

7

crimes under specified circumstances. (*People v. Mancebo* (2002) 27 Cal.4th 735, 741 [117 Cal.Rptr.2d 550, 41 P.3d 556]; see also [*People v.*] *Murphy* [(2001)] 25 Cal.4th [136,] 155 [§§ 666, 667.71, and the Three Strikes law do not establish enhancements]; [*People v.*] *Jenkins* [(1995)] 10 Cal.4th [234,] 254 [§ 667.7 does not establish enhancement]; *People v. Jones* (1997) 58 Cal.App.4th 693, 709 [68 Cal.Rptr.2d 506] [One Strike law establishes "'alternative sentencing scheme,'" not an enhancement].)" Accordingly, the prosecution timely filed its case against defendant.

## II.     Defendant's Prior Rape of Jaime

Defendant contends that the trial court violated his right to due process when it admitted evidence that he raped Jaime. Specifically, he contends that Evidence Code section 1108,[3] the statute that permits the admission of such propensity evidence in sex offense cases despite the general prohibition on propensity evidence in Evidence Code section 1101, is facially unconstitutional; and the evidence of his prior rape violated his right to due process because the evidence was more prejudicial than probative.

In *People v. Falsetta* (1999) 21 Cal.4th 903, 907, 917, the California Supreme Court held that propensity evidence is admissible under section 1108 in sex crimes cases without violating the due process clause because section 1108's incorporation of Evidence Code section 352's balancing test prevents an unfair trial. Defendant acknowledges that the California Supreme Court has rejected his due process argument and concedes that we are bound to follow that decision by *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.

Moreover, even assuming the trial court erred in admitting evidence that defendant raped Jaime and the admission violated defendant's federal due process rights, any such error was harmless under *Chapman v. California* (1967) 386 U.S. 18, 24 [reversal is

---

**3**     Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

8

required in the case of the deprivation of due process rights unless the State can prove beyond a reasonable doubt that the error did not contribute to the verdict] because the evidence of defendant's guilt was overwhelming. Marlene spent time in the car with her assailant prior to the rape and identified defendant at trial as her assailant. After she was raped, Marlene called the police and was taken to the hospital where Gorba performed a sexual assault examination. Gorba prepared a rape kit that included internal and external swabs of Marlene's vagina. Murphy, a DNA expert, compared the DNA profiles from the samples taken from Marlene to defendant's DNA profile and determined that they matched. With respect to both the external and internal samples, Murphy testified that the probability of randomly selecting a person from the United States Hispanic population whose DNA profile matched the major contributor was astronomical. Given the overwhelming evidence of defendant's guilt, any error was harmless beyond a reasonable doubt.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


RAPHAEL, J.*


I concur:


KRIEGLER, Acting P. J.


---

\*      Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

People v. Mario Morales

B264847

BAKER, J., Concurring

I agree the judgment should be affirmed. I write separately to explain why I reject defendant's claim his due process rights were violated by the admission of evidence, under Penal Code section 1108, concerning the prior rape of Jamie.

The majority is, of course, correct that we are obligated to follow *People v. Falsetta* (1999) 21 Cal.4th 903, and that decision disposes of defendant's argument that section 1108 is facially unconstitutional. Defendant also appears to contend, albeit in just two sentences of his opening brief, that admission of the Penal Code section 1108 evidence violated his due process rights as applied because the evidence was more prejudicial than probative. I reject that contention; the trial court did not abuse its discretion when deciding the prior rape should not be excluded under Evidence Code section 352. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286-1287; *People v. Falsetta*, *supra*, at pp. 913, 917-918.)

The majority goes on to hold the jury's consideration of the prior rape evidence was harmless beyond a reasonable doubt even if admission of the evidence violated defendant's due process rights because there is otherwise overwhelming evidence of defendant's guilt. I am not so sure, and I do not believe we need to answer that question to resolve the issues presented for our consideration.

BAKER, J.