Filed 7/2/21  P. v. Simms CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERNEST SIMMS et al.,<br><br>    Defendants and Appellants. | B304577<br><br>(Los Angeles County<br>Super. Ct. No. BA050222) |

APPEALS from orders of the Superior Court of Los Angeles County.  Victor D. Martinez, Judge.  Reversed and remanded with directions.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant Simms.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant Hill.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

Ernest Simms and Brian Hill appeal the summary denial of their petitions for resentencing under Penal Code[1] section 1170.95. Appellants maintain that because they made a prima facie showing that they are entitled to relief under the statute, the superior court was obligated to issue an order to show cause pursuant to section 1170.95, subdivision (c), and conduct an evidentiary hearing in accordance with subdivision (d). Instead, the superior court improperly engaged in fact finding based on this court's prior opinion in the direct appeal to determine that appellants were major participants in the underlying felonies who acted with reckless indifference to human life and were thus ineligible for resentencing as a matter of law. We agree that the superior court erred to the extent it relied upon the prior appellate opinion to make its own findings of fact at the prima facie review stage under section 1170.95, subdivision (c).

The error is not harmless. Having taken judicial notice of the trial record and reviewed the jury's verdict forms and jury instructions, we conclude the record of conviction does not demonstrate appellants are ineligible for relief as a matter of law. We therefore remand the matter to the superior court for further proceedings, including the issuance of an order to show cause and an evidentiary hearing in accordance with section 1170.95, subdivision (d).[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] In remanding this matter to the superior court for proceedings in accordance with section 1170.95, subdivision (d), "[w]e express no opinion about [appellants'] ultimate entitlement to relief following the hearing." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 983 (*Drayton*).)

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The murder of Randy Burge*[3]

On February 22, 1990, around 2:00 p.m., Simms approached Kevin Thomas, who was in his car stopped in traffic. Simms put a .25 or .32 caliber revolver to the back of Thomas's head and ordered him out of the car. Simms then escorted Thomas at gunpoint to a nearby residence, where they were met at the back door by codefendant Clifford Jenkins, who also pointed a .25 or .32 caliber revolver at Thomas's head. Jenkins handcuffed Thomas and wrapped tape around his mouth before leaving the house. Jenkins returned moments later holding Randy Burge—a witness to Thomas's kidnapping—at gunpoint. Simms told Burge he was " 'at the wrong place at the wrong time.' " (*Simms*, *supra*, B074209.)

Hill and codefendant Freddie Doss then entered the house carrying guns: Hill's was a .25 or .32 caliber revolver and Doss held a .38 caliber revolver. Simms and Jenkins forced Thomas to call his mother to demand a $10,000 ransom. After the call, Jenkins took a ring, keys, and approximately $30 in cash from Thomas. Burge began asking the men why he was being held. Simms pointed his gun at Burge and told him to shut up. But Burge persisted in asking questions and making noise until Simms shot him in the foot. (*Simms*, *supra*, B074209.)

---

[3] The statement of facts is drawn from this court's decision filed on January 11, 1996, in appellants' direct appeal from their convictions. (*People v. Ernest Simms et al.* (Jan. 11, 1996, B074209) [nonpub. opn.] (*Simms*); *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110 [appellate opinion is part of the record of conviction].)

At some point, Simms and Jenkins left the house to secure the ransom money while Hill and Doss remained guarding Thomas and Burge at gunpoint. Fearing he was going to be killed, Thomas threw himself through a closed glass window. He landed on his back in the driveway and the handcuffs broke. Hill and Doss fired at least eight to ten shots at Thomas as he ran down the street. Thomas ducked into a store and hid while a store employee called the police. (*Simms*, *supra*, B074209.)

Around 9:44 p.m. police located Simms and Jenkins near the house where Thomas and Burge had been held. Both men fled and were captured by police a short time later. (*Simms*, *supra*, B074209.)

That night around 9:00 p.m. a witness heard a single gunshot from Centinela Park in Inglewood, approximately 3.9 miles from the residence where Burge and Thomas had been held. The next morning a jogger discovered Burge's body facedown in the park. His hands were handcuffed behind his back and a rolled-up T-shirt was stuffed in his mouth. Burge had been fatally shot execution-style with a single round from a .38 caliber firearm, resulting in a contact wound to his head behind the ear. He had also suffered a gunshot wound to his foot from a .22 caliber handgun. The coroner estimated the time of death between 8:00 and 9:00 p.m. on February 22, 1990. (*Simms*, *supra*, B074209.)

B. *Relevant proceedings*

Following a jury trial, Simms and Hill (along with codefendants Jenkins and Doss) were convicted of the first degree murder of Randy Burge (§ 187, subd. (a); count I), among other

offenses.[4]  The jury also found true two special circumstance allegations against Hill (as well as Doss) that the murder was committed during the commission of a robbery, a kidnapping, and a kidnapping for ransom.  (§ 190.2, subd. (a)(17).)  (*Simms*, *supra*, B074209.)  At sentencing, the trial court struck the special circumstance findings, stating its intent to sentence all of the defendants identically.  The court sentenced Simms and Hill to a term of 25 years to life for the first degree murder of Burge, plus a consecutive term of four years for the personal firearm use enhancement, for a principal term of 29 years to life.[5]  (*Simms*, *supra*, B074209.)  This court affirmed the judgments of conviction in an unpublished opinion filed January 11, 1996.  (*Simms*, *supra*, B074209.)

Hill and Simms filed petitions for resentencing under section 1170.95 on March 11, 2019, and July 11, 2019,

---

[4] Appellants were also convicted of the kidnapping of Burge for robbery (§ 209, subd. (b); count II), the kidnapping of Thomas for ransom (§ 209, subd. (a); count III), conspiracy to commit the crime of kidnapping for ransom of Thomas, with true findings on five of the alleged overt acts (§§ 182/209, subd. (a); count IV), the robbery of Thomas (§ 211, subd. (a); count V), and the attempted willful, deliberate, and premeditated murder of Thomas (§§ 664/187, subd. (a); count VI).  The jury found true the personal use of a firearm allegation as to all defendants on counts I through VI.  (*Simms*, *supra*, B074209.)

[5] Appellants' sentences also included a consecutive subordinate term of life with the possibility of parole for the attempted murder of Thomas (count VI), and stayed sentences under section 654 of life with the possibility of parole for the two kidnapping charges and the conspiracy to commit kidnapping charge.  (*Simms*, *supra*, B074209.)

5

respectively. The superior court appointed counsel, and the district attorney filed opposition to both petitions. On January 28, 2020, the parties submitted on the briefs, and the superior court denied the petitions without issuing an order to show cause. Relying on this court's prior opinion in the direct appeal and the People's opposition, the superior court summarily denied the petitions on the ground that Hill and Simms were major participants who acted with reckless disregard for human life, and they had therefore failed to state a prima facie case for relief under section 1170.95, subdivision (c).

## DISCUSSION

### The Superior Court Summarily Denied Appellants' Section 1170.95 Petitions in Error

#### A. *Applicable law*

The Legislature enacted Senate Bill No. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).)

With one narrow exception (where the victim was a peace officer killed in the performance of duty and the defendant knew or reasonably should have known that fact (§ 1170.95, subd. (f)), "Senate Bill 1437 effectively eliminates murder convictions premised on any theory of vicarious liability—that is, any theory by which a person can be convicted of murder for a killing committed by someone else (such as the felony-murder theory or

6

the natural and probable consequences theory)—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life." (*People v. Fortman* (2021) 64 Cal.App.5th 217, 222–223 (*Fortman*); § 188, subd. (a)(3) [amending natural and probable consequences doctrine to require that all principals act with express or implied malice to be convicted of murder (with the exception of felony murder under § 189, subd. (e)]; § 189, subd. (e) [requiring that participant in specified felony during which a death occurs may be convicted of murder only if he/she was the actual killer, an aider and abettor who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life]; *Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)

Senate Bill No. 1437 also added section 1170.95 to provide a procedure by which those convicted of felony murder or murder under a natural and probable consequences theory may seek retroactive relief if they could no longer be convicted of murder because of the changes to sections 188 or 189. (*Gentile*, *supra*, 10 Cal.5th at p. 843; *Fortman*, *supra*, 64 Cal.App.5th at p. 223; *Martinez*, *supra*, 31 Cal.App.5th at pp. 722–723.)

Subdivision (a) of section 1170.95 sets forth the three conditions for eligibility for relief.[6] Subdivision (b) in turn

_____

[6] Those conditions are: (1) the charging document "allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "petitioner was convicted of first or second degree murder"; and (3) "petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective

7

"describes where and how the petition must be filed and specifies its required content," including a declaration by the petitioner that he or she "is eligible for relief according to the criteria set out in subdivision (a)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 973.) If a petition for resentencing under section 1170.95 meets the requirements of subdivisions (a) and (b), the superior court conducts the analysis prescribed in subdivision (c) before issuing an order to show cause.[7] (*Drayton*, at pp. 974–975; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327–328, review granted Mar. 18, 2020, S260493 (*Verdugo*); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, 1140, review granted Mar. 18, 2020, S260598 (*Lewis*).) At this initial stage, the superior court may examine readily ascertainable information in the record of conviction as it conducts a preliminary screening of the petition to verify the petitioner's eligibility for relief under the statute. (*Lewis*, at p. 1140, rev.gr.; *Verdugo*, at p. 329, rev.gr.; *People v. Offley* (2020) 48 Cal.App.5th 588, 597; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674–675, review granted July 8, 2020,

---

January 1, 2019." (§ 1170.95, subd. (a); *Drayton*, *supra*, 47 Cal.App.5th at p. 973.)

[7] Section 1170.95, subdivision (c) provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

S262481; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 900, review granted Aug. 12, 2020, S263219.)

If the initial screening of the record of conviction does not indicate ineligibility as a matter of law, the superior court must appoint counsel (if requested) and accept briefing from the parties on the issue of whether the petitioner is " 'entitled to relief.' " (*Drayton, supra,* 47 Cal.App.5th at p. 976; *Verdugo, supra,* 44 Cal.App.5th at pp. 332–333, rev.gr.) At this stage, with the benefit of the parties' briefing, the superior court may conduct a more thorough review of the record, including the jury instructions, verdict form(s), and any special findings or enhancement allegations the jury found true to determine if the petition makes a prima facie showing of entitlement to relief. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815 (*Duchine*); *People v. Gomez* (2020) 52 Cal.App.5th 1, 16, review granted Oct. 14, 2020, S264033; see *Verdugo,* at pp. 335–336, rev.gr.)

In conducting its prima facie review under section 1170.95, subdivision (c), however, the superior court does not engage in factfinding. Rather, the court must "assume all facts stated in the section 1170.95 petition are true" (*Drayton, supra,* 47 Cal.App.5th at p. 980) and draw "all factual inferences in favor of the petitioner" (*Verdugo, supra,* 44 Cal.App.5th at p. 329, rev.gr.; *Drayton,* at pp. 968, 982). The superior court's authority to make determinations without issuing an order to show cause and proceeding in accordance with section 1170.95, subdivision (d) is thus circumscribed by "readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless

9

indifference to human life in the commission of the crime).” (*Drayton*, at p. 980; *Duchine*, *supra*, 60 Cal.App.5th at p. 813.)

If, after the parties’ briefing, the petitioner has made a prima facie showing that he is entitled to relief because there remains no proof of ineligibility as a matter of law, “the court *shall* issue an order to show cause” why relief should not be granted.  (§ 1170.95, subd. (c), italics added; *Drayton*, *supra*, 47 Cal.App.5th at p. 980; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 [“A prima facie showing is one that is sufficient to support the position of the party in question”]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 [“A ‘prima facie’ showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited”].)  However, “true factfinding should be reserved and exercised only after an order to show cause is issued and the parties are permitted to supplement the record with new evidence, including, if requested, through an evidentiary hearing” (*Duchine*, *supra*, 60 Cal.App.5th at p. 815) at which it is the prosecution’s burden to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing (§ 1170.95, subd. (d)(3); *Drayton*, *supra*, 47 Cal.App.5th at p. 981).

**B. *The record of conviction does not establish appellants’ ineligibility for relief under section 1170.95 as a matter of law*[8]**

Appellants alleged facts sufficient to state a prima facie case entitling them to relief, and the superior court erred in

---

[8] We have previously held that a superior court may deny a section 1170.95 petition after the prima facie review on the

10

making its own findings of fact at the prima facie review stage of the section 1170.95 proceeding without issuing an order to show cause and conducting an evidentiary hearing. Specifically, the superior court relied on the prior appellate opinion to conclude

ground that a defendant convicted of murder with a felony-murder special-circumstance finding (§ 190.2, subd. (a)(17)) is ineligible as a matter of law for resentencing under section 1170.95. (*People v. Nunez* (2020) 57 Cal.App.5th 78, review granted Jan. 13, 2021, S265918.) The rationale for our holding in *Nunez* lay in the instructions to the jury that in order to find the felony-murder special-circumstance allegation true, the jury had to find beyond a reasonable doubt that the defendant intended to kill or was a major participant in the underlying felony who acted with reckless indifference to human life. (*Nunez*, at p. 91.)

In Hill's case, the jury found true two special-circumstance allegations under section 190.2, subdivision (a)(17), and although the trial court struck the special-circumstance findings for purposes of sentencing, the court's action did not abrogate the jury's findings. (See *People v. Brooks* (2017) 3 Cal.5th 1, 120 [facts underlying a vacated special-circumstance finding remain circumstances of the crime of which defendant was convicted].) Our holding in *Nunez* would therefore ordinarily preclude Hill from making the requisite eligibility showing as a matter of law. However, the jury instructions given in this case did not—as a condition to finding the special-circumstance allegations true—require the jury to find Hill had the intent to kill or was a major participant in the underlying felonies who acted with reckless indifference to human life. Accordingly, the jury's special-circumstance findings do not constitute a unanimous jury finding beyond a reasonable doubt that Hill intended to kill or was a major participant who acted with reckless indifference to human life. In the absence of such a jury finding, Hill's special circumstances do not, as a matter of law, bar relief under section 1170.95.

11

that appellants are ineligible for relief as major participants in the underlying crimes who acted with reckless indifference to human life. As the *Duchine* and *Drayton* courts observed, however, "[t]he major participant and reckless indifference findings the trial court made based solely on the record evidence entail the weighing of evidence, drawing of inferences, and assessment of credibility that should be left to the factfinding hearing process contemplated by section 1170.95, subdivision (d)." (*Duchine, supra*, 60 Cal.App.5th at p. 816; *Drayton, supra*, 47 Cal.App.5th at p. 982.) At the prima facie review stage of a section 1170.95 proceeding, such judicial factfinding is prohibited.

The error is not harmless because the record of conviction does not establish appellants' ineligibility for relief under section 1170.95 as a matter of law. The Attorney General resists this conclusion by asserting that appellants' first degree murder convictions were not based on a felony-murder theory or the doctrine of natural and probable consequences at all, but on the theory that they and their codefendants acted with actual malice. In support of the contention, respondent points to the prior appellate decision, which in turn relied on the jury's preprinted general verdict forms[9] to declare that "the jury convicted each appellant of willful, premeditated and deliberate first degree murder." (*Simms, supra*, B074209.) However, because the presence of the "willful, deliberate, and premeditated" language

---

[9] The preprinted verdict forms stated that the jury found "the Defendant [Simms/Jenkins/Doss/Hill] guilty of the crime of the WILLFUL, DELIBERATE, AND PREMEDITATED MURDER OF RANDY BURGE."

12

on the preprinted general verdict form does not represent an actual finding by the jury that appellants committed willful, deliberate, and premeditated murder, it does not establish the jury's rejection of felony murder or natural and probable consequences as the theory underlying appellants' first degree murder convictions. In short, the record of conviction does not eliminate the possibility that the jury found appellants guilty of first degree murder under a felony-murder or natural and probable consequences theory, and thus does not " 'show *as a matter of law* that [appellants are] not eligible for relief.' " (*Lewis, supra*, 43 Cal.App.5th at p. 1138, italics added.)

The language on a verdict form is to be " ' " 'construed in light of the issues submitted to the jury and the instructions of the court,' " ' " and is not always dispositive of the jury's findings. (*People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272, quoting *People v. Jones* (1997) 58 Cal.App.4th 693, 710.) The jury in this case was instructed it could convict the defendants of first degree murder on the theories of willful, deliberate, premeditated murder, felony murder, or under the doctrine of natural and probable consequences.[10] In argument to the jury the prosecutor

_____

[10] Specifically, the trial court instructed the jury on aider and abettor liability for murder based on natural and probable consequences (CALJIC No. 3.02), coconspirator liability for murder based on natural and probable consequences (CALJIC No. 6.11 (1991 rev.)), murder based on the unlawful killing of a human being with malice aforethought or during the commission or attempted commission of a robbery (CALJIC No. 8.10), willful, deliberate, and premeditated murder (CALJIC No. 8.20), first degree felony murder—robbery (CALJIC No. 8.21), first degree felony murder in pursuance of a conspiracy (CALJIC No. 8.26),

13

explained that the defendants were guilty of the first degree murder of Randy Burge pursuant to any one of four different theories: (1) willful, deliberate, and premeditated murder; (2) robbery felony murder, including murder liability for an aider and abettor to the robbery and/or for a coconspirator in the robbery; (3) murder liability for an aider and abettor to a kidnapping if the murder was a natural and probable consequence of the kidnapping; and (4) murder liability for a coconspirator in the conspiracy to kidnap Thomas if a natural and probable consequence of the conspiracy was the killing of a witness.

The prosecutor emphasized that although a verdict of first degree murder had to be unanimous, unanimity as to which theory applied was not necessary for a conviction. This is correct. As our Supreme Court has explained, "premeditated murder and felony murder are not different crimes, but are instead alternate mechanisms of determining liability. Accordingly, 'as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty.'" (*People v. Scully* (2021) 11 Cal.5th 542, 598.) Here, the preprinted general verdict form by which the jury convicted appellants of first degree murder included one of four theories of guilt which some, all, or none of the jurors may have accepted as the basis for the conviction.

This is not a case where the jury was given several different guilty verdict forms, each stating a distinct theory of

___

and first degree felony murder liability of aider and abettor to a robbery (CALJIC No. 8.27).

first degree murder—one theory being willful, deliberate, and premeditated murder, and others presenting the vicarious liability theories of felony murder and natural and probable consequences—that would allow us to infer the basis for the jury's guilty verdict from its choice of one verdict form over the others. Instead, the jury was given a single, general guilty verdict form for the crime of first degree murder that included one possible theory of first degree murder preprinted on it. (See § 189, subd. (a).) Under these circumstances, the inclusion of the "willful, deliberate, and premeditated" language on the verdict form does not constitute a jury finding of the specific theory underlying the verdict, nor does it preclude the possibility that the jury found appellants guilty of first degree murder under a felony-murder or natural and probable consequence theory. Accordingly, the presence of this phrase on the verdict form does not establish as a matter of law appellants' ineligibility for relief under section 1170.95.

Finally, we reject the suggestion that the observation in our prior opinion that "the jury convicted each appellant of willful, premediated and deliberate first degree murder" (*Simms*, *supra*, B074209) should elevate the boilerplate language in the general verdict form to an express finding by the jury. Where, as here, the instructions and verdict forms presented to the jury demonstrate there was no such express finding, we need not give dispositive weight to the language in our prior decision. (See *People v. Woodell* (1998) 17 Cal.4th 448, 457 ["not . . . all appellate opinions" "establish" what happened before the trial court, and "[w]hether and to what extent an opinion is probative in a specific case must be decided on the facts of that case"].)

15

## DISPOSITION

The postjudgment orders denying Simms's and Hill's petitions for resentencing are reversed.  The matters are remanded to the superior court for the issuance of an order to show cause and further proceedings in accordance with Penal Code section 1170.95, subdivision (d).

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.